[No. 12152.   Department Two. — November 22, 1889.]

# GESCHE VON GLAHN, Respondent, v. J. C. BRENNAN et al., Appellants.

Adverse Possession — Admission of Tenancy. — The possession of one who admitted that he held under another cannot be adverse to such other.   Instance.

Tenancy at Will — Denial of Landlord's Title — Termination of Tenancy. — Where a tenant at will denies his landlord's title, and sets up title in himself, he cannot avail himself of the fact that his tenancy was not terminated by notice.

Separate Property — Purchase with Money Earned by the Wife. — Where a husband tells his wife that she can have everything that she can earn, and she thereupon goes into business for herself and earns money, and invests it in real property, and it does not appear that the husband makes any claim to it, it must be held in an action of ejectment by the wife against an intruder that the property is her separate property.

Motion for New Trial — Newly Discovered Evidence — Showing. — The evidence claimed to be newly discovered must not be cumulative merely, or such as does not render a different result probable; and there must be a sufficient showing of diligence.

Id. — Record on Appeal. — A marking of the affidavits by the clerk of the court as having been read on the hearing is not a sufficient record on appeal.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion.

*Davis Louderback*, for Appellants.

*Joseph Kirk*, for Respondent.

HAYNE, C. —Ejectment for a lot 40 by 69½ feet, on the southwest corner of Filbert and Steiner streets, in the city of San Francisco; verdict and judgment for plaintiff; defendants appeal.

The defendants (who were husband and wife) had no paper title, but relied on adverse possession. The defendant, J. C. Brennan, says that one Hagan gave him possession in 1872, and told him to hold the lot for one

Godfrin (known as French Charlie) until his, Godfrin's, return; that no one had any right to it except Godfrin, and that "he did n't think the Frenchman would come back to claim it." Defendant Brennan then says: "I claimed it as mine from holding possession." But we think that the evidence shows he held the property as tenant of one Mrs. Weygant, who was the grantor of the plaintiff. He admits that he was her tenant as to adjoining property, but says that the tenancy did not apply to the lot in controversy. It is clear that Mrs. Weygant claimed the whole piece. It is covered by the decree of distribution of her husband's estate. One of defendant's own witnesses says: "I knew Mrs. Weygant always claimed this lot"; and it was in evidence that Brennan told one Rushmore that Mrs. Weygant claimed it, and he acknowledges that she paid the taxes on it from 1872 (which was the time he went into possession) up to 1883. And it is not likely that she would have allowed Brennan to hold the adjoining piece as her tenant from month to month for so long a period if he had manifested any disposition to claim this lot as his own, when she was all the while claiming it as hers and paying taxes on it. Both pieces were used as a "milk ranch." The lot in controversy was used as a calf-corral, and for this purpose was separately inclosed. But it communicated with the other piece by bars, and there was no difference in the general use. Even in the absence of other evidence, we should regard his story of a difference in the way he held the two pieces as an exceedingly lame one. But there is other testimony. It is in evidence that he declared in 1883 to one Tilton, a real-estate broker, that the property belonged to Mrs. Weygant. "He said he was, and had been, holding possession of this lot for Mrs. Weygant. He was going to keep it until Mrs. Weygant says to give it up." And this conversation had reference to the lot in controversy. He told one Waterman, a police-officer, on an occasion

when he was tearing down a barn, that "he was taking it down for Mrs. Weygant; she could n't do it herself"; and that "this lot was Mrs. Weygant's." After he was arrested for tearing down the barn he repeated to the officer "that this property was Mrs. Weygant's, and that he tore down the barn for her; that he was there as her tenant." And when one Rushmore was asserting some claim to the property, he wrote to Mrs. Weygant the following letter:—

"San Francisco, May 15, 1883.

"Mrs. H. Weygant: *Madam,*—The lady, Jane Rushmore, who is recorded as owner of the lot *on the corner of Filbert and Stiener streets,* was sent on last week to Stockton Insane Asylum. Her brother is negotiating with a man in the neighborhood to erect a building *on the lot.* I would like to have some authority or some legal standing to be able to prevent him from doing so. If possible, I would like to see you. I do not like to leave from around the place night or day; for I hear this man Rushmore is bound to put some one to live *on it,* if not prevented.

"Hoping you and all the family are well, I remain, yours truly,    ·    J. C. Brennan.

"P. S.—If you cannot come, please send me word what to do.    J. C. Brennan."

The lot in controversy is the lot "on the corner of Filbert and Steiner streets." The adjoining piece owned by Mrs. Weygant was not on the corner. And Brennan admits that he did "not know of any property about which there was a dispute between Mrs. Weygant and Rushmore, except it was this lot in litigation here."

In view of all this testimony, we quite agree with the jury in the view they seem to have taken of the case.

The learned counsel insists, however, that if there was a tenancy it was not terminated by notice. "There was no evidence," he says, "of the termination of this

alleged tenancy of this lot. . . . . . Even a tenancy at will requires a month's notice to terminate the same." But in view of the denials in the answer of the ownership of the plaintiff, and the claim he sets up to be himself the owner, we hardly think that this position will avail him. (*Simpson* v. *Applegate*, 75 Cal. 345.)

It is argued for the appellants, however, that the plaintiff was a married woman, and that the property was community property. But the plaintiff testifies that her husband told her that "everything you make is yours." and that she went into business for herself, and thereby earned the money with which she purchased the property. It does not appear that the husband makes any claim to the property. For all that appears to the contrary, he yields to the claim of his wife. And under the circumstances, we think that the property must be considered to be the separate property of the plaintiff.

One of the grounds of the motion for new trial was newly discovered evidence. Concerning this, it is sufficient to say the affidavits are not incorporated in a bill of exceptions, but are merely marked by the clerk as having been used on the hearing. But if they could be considered, they are cumulative merely, and are not such as to render a different result probable if a new trial were had, and moreover, there is no sufficient showing of diligence.

We therefore advise that the judgment and order appealed from be affirmed.

Belcher, C. C., and Foote, C., concurred.

The Court. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.

Hearing in Bank denied.