[Civ. No. 244.   Third Appellate District.—April 3, 1907.]

# D. A. MANUEL, Respondent, v. P. A. FLYNN, Appellant.

ACTION TO QUIET TITLE TO STRIP OF LAND—BOUNDARY—SUPPORT OF
FINDINGS AND JUDGMENT.—In an action to quiet title to a strip
of land involving a disputed boundary line between the parties,
where the evidence is conflicting in relation thereto, and there is
evidence fully sustaining all of the material findings in favor of
the plaintiff, which are amply sufficient to support the judgment,
the province of the trial court to pass upon the weight of the
evidence cannot be interfered with upon appeal.

ID.—TESTIMONY OF PLAINTIFF TO PARTICULAR SURVEY—CROSS-EXAMINA-
TION AS TO OTHER SURVEYS.—Where plaintiff testified in chief only
as to the employment of a particular survey or to establish the
boundary line and to his own observation as to the meeting of
corners, the court properly disallowed questions asked on cross-ex-
amination as to other surveys not referred to in the examination
in chief.

ID.—LATITUDE OF CROSS-EXAMINATION—SCOPE LIMITED BY EXAMINA-
TION IN CHIEF.—The right of cross-examination should be given
considerable latitude or not be restricted where it is apparent that
it will accomplish some important purpose, and is not carried be-
yond the scope of the examination in chief.   The discretion of
the court should not be abused, or given such elasticity as to per-
mit an adversary party to prove his own case under the guise of
cross-examination by propounding questions, neither directly nor
collaterally related to the subject matter of the original exami-
nation.   When cross-examination transcends the limitation and pur-
pose of the testimony in chief, it ceases to be cross-examination.

ID.—WRITTEN AGREEMENT AS TO LOCATION OF CORNER—ALTERATIONS—
BURDEN OF PROOF—IMMATERIALITY.—Where the plaintiff intro-
duced in evidence a written agreement as to the location of an
important corner in which alterations appear, the burden of proof
was upon the plaintiff to explain the same, and where one was shown
to have been made before signing, and the other to have been
made merely to correct a manifest mistake in a figure relating to
the location of a tree, the location of which was definitely fixed in
the agreement by descriptive reference to other monuments, the al-
terations were sufficiently explained, and shown to be immaterial.

ID.—TIME FOR DISPROOF OF EXPLANATION.—The proper time for an at-
tempt by the defendant to disprove the explanations offered by the
plaintiff to show the immateriality of the erasures in the written
agreement was when those explanations were made, and when the
admissibility of the written agreement was before the court for

its determination, and the court's conclusion on that issue is binding here, notwithstanding a subsequent attempt of defendant to disprove the explanation, when it cannot be said, as matter of law, that the court's determination was unsupported by the explanations made.

ID.—EVIDENCE—DECLARATION AGAINST INTEREST.—A witness for the plaintiff was properly allowed to testify to a conversation with the defendant at the time when plaintiff's fence on the boundary line was intact, in which the defendant stated that he had all the land that belonged to him. The evidence, while not conclusive, was admissible to show a declaration by the defendant against his interest.

ID.—DOCUMENTARY EVIDENCE—NOTICE TO REMOVE FENCE SERVED BY CONSTABLE—CERTIFICATE NOT PRIMA FACIE EVIDENCE.—Where plaintiff denied having received any notice to remove his fence, a notice signed by the defendant and certified by the constable to have been served by him upon plaintiff was not admissible, the certificate being no part of the official duty of the constable, and not *prima facie* evidence of the fact of service.

ID.—NEW TRIAL—AFFIDAVITS—BILL OF EXCEPTIONS—REVIEW UPON APPEAL—STIPULATION.—Affidavits used on a motion for a new trial cannot be considered on appeal from an order denying the motion, where they are not incorporated in a bill of exceptions authenticated as required by rule XXIX of this court, and a stipulation of attorneys to the correctness of the transcript cannot take the place of such authentication, whether it includes the affidavits or not, especially where it does not thereby or otherwise appear that they constituted all the affidavits and papers used on the hearing.

APPEAL from a judgment of the Superior Court of Napa County, and from an order denying a new trial. A. G. Burnett, Judge presiding.

The facts are stated in the opinion of the court.

Webber & Rutherford, for Appellant.

T. B. Hutchison, for Respondent.

HART, J.—Action to quiet title and for damages claimed to have been suffered by plaintiff through certain alleged tortious acts of defendant.

The complaint alleges that the plaintiff, "ever since the 23d day of February, 1884, has been the owner, in possession

of and entitled to the possession of certain real property, situate within the County of Napa, State of California," and of which a description is particularly set out. The title in plaintiff to the land as described in the complaint is not questioned, but the controversy arises over the line dividing the lands of the parties and involves a certain strip of land which the plaintiff claims is within the description of the property belonging to him, but which defendant insists is within the boundaries of his lands.

It is also charged, by appropriate averments, that on the ninth day of May, 1901, the defendant committed a trespass, *vi et armis,* upon said property of plaintiff, and that on the fourteenth day of May, 1901, he likewise entered upon the property in dispute, and "maliciously tore down and destroyed the fence belonging to said plaintiff along the north and east sides of said plaintiff's land for a distance of about one mile." It is charged that by reason of the trespass first alleged, the plaintiff suffered damage in the sum of $2,000, and that because of the alleged destruction of the fence he was damaged in the sum of $100. Other damages are alleged to have been sustained in the sum of $100 and $200, respectively, for cutting down and destroying trees on plain-tiff's property and by reason of the alleged fact that through the destruction of the fence the stock of plaintiff was enabled to and did run at large, etc. It is alleged that defend-ant claims some interest in plaintiff's property adversely to the latter. The complaint is unverified.

The answer denies the allegations of the complaint, both as to plaintiff's ownership of the certain strip or portion of the land referred to and as to the damages claimed. The question presented by the pleadings, aside from the incidental question of damages, is as to the ownership of said strip of land, approximately two chains in width and something like a half mile long.

The plaintiff was given judgment, quieting his title to the strip of land in controversy and awarding him damages in the sum of $200—$100 for the destruction of the fence as alleged, and $100 for the alleged injury suffered by plaintiff through the running at large of plaintiff's stock, in consequence of the alleged destruction of the fence and the loss thereby to him of the value of the pasturage upon said lands. The last-mentioned item of damages was, however, upon the order

5 Cal. App.—21

of the court at the time the motion for a new trial was made, remitted by the plaintiff, and the judgment, so far as it affected damages, was reduced accordingly. The conclusion of the court was, as the findings of fact and judgment show, that the plaintiff's contention as to the location of the line between the lands of the parties was sustained by the evidence. The appeal is from the judgment and order denying a new trial.

1. Appellant contends that the evidence is insufficient to support the findings of the court, and specifies the particulars in which the evidence, according to his view, sustains his position. There appears from the record some conflict in the evidence relative to the disputed line dividing the respective properties of the parties. There is seldom presented to the appellate court a record on appeal of which the same thing may not be said where the sufficiency of the proof of the ultimate fact is challenged. But we think the evidence as shown here fully sustains all the material findings, from which the judgment derives ample support to uphold it.

While it could serve no useful purpose to consider the evidence in detail, in view of our opinion as already expressed that it fully justifies the findings of the court upon all the essential propositions in the case, it may be well to explain the exact point of difference between the parties and make a brief statement of the facts bearing upon that point as established by the evidence. The lands of the appellant are situated without the exterior boundaries of the grant known as the "Rancho Carne Humana," near Calistoga, Napa county, while the lands of the respondent are located within the boundaries thereof. In the determination of the ultimate fact it became necessary to locate through the evidence the eastern boundary line of said ranch as made by certain early surveys. The respondent contends, of course, that the strip of land in dispute is embraced within the boundary line of said rancho, while the appellant claims that it is not, and the whole controversy finally hinges upon and is reduced to the determination of the location of what is known as "Corner 51." This corner was thus designated by one Tracy, a surveyor, who surveyed the rancho in the early sixties, and was thereafter designated as "Corner 32" by one T. J. Dewoody, a surveyor, who, in the month of February, 1867, and in the month of August, 1868, surveyed the rancho, and

which survey so made by him was subsequently confirmed
by the United States district court, and contains a full de-
scription of the boundary lines of said rancho. In the year
1886 and again in the year 1887, one O. H. Buckman, a
surveyor and civil· engineer, surveyed, at the request of the
plaintiff, a portion of the land of the latter for the purpose
of ascertaining the location of the line, and at the trial tes-
tified that he "ran the north line of Lot 5, a part of the line
of the Rancho Carne Humana, and some of the lines of the
government surveys adjoining. One of the corners of the
rancho is on the line of Mr. Manuel, commonly called Corner
51 of the Tracy survey." He said that he was familiar
with the field-notes of the "Tracy survey of the Carne
Humana Rancho as affecting Corner 51, and also with the
field-notes of the Dewoody survey" of said rancho, and that,
according to the field-notes of those surveys there was no
change made in the Dewoody survey and corners 50 and 51.
There was other evidence to this point. The plaintiff testified
that he built a fence on the line made by Buckman a short
time after the latter made his survey, and that the same re-
mained on that line ,until destroyed by defendant a short
time prior to the institution of this suit. There were other
witnesses who corroborated the testimony thus given on behalf
of plaintiff. There was also admitted in evidence a written
agreement, made in February, 1884, and to which the plain-
tiff and defendant, and Ephraim and T. A. Light (the lat-
ter owning lands adjoining those of the former) were parties,
which stipulated as to the correct location of "Corner 51."
There is some testimony directly tending to show that the
line as contended for by plaintiff was consistent with the
number of acres embraced within his lands, as described
by metes and bounds—that is to say, that, including the strip
of land in dispute in the computation of the number of acres
embraced within the description of the lands belonging to
plaintiff, the latter would only have the number of acres to
which he was entitled. On behalf of defendant there was
evidence contradictory of that given for plaintiff. Wallace,
a civil engineer, testified to having made a survey of the dis-
puted line of the rancho a short time previous to the trial
of this action. His testimony, as well as that of one Lillie,
who stated that he was then engaged in the business of a
carpenter but had studied and had had some experience in

surveying, was, as to the location of the grant line and "Corner 51," opposed to that given for plaintiff. There was also testimony given by neighbors and old settlers in the locality of the lands of the parties tending to corroborate the testimony of the surveyors thus testifying for the defendant. The evidence, so far as such a proposition may be determined from the bare record, seems to greatly preponderate in favor of the plaintiff's contention. It was, however, as is well understood, for the court below to pass upon the weight and probative force of the evidence, and, having done so, and made its findings accordingly upon evidence sufficient to justify them, its conclusions are beyond our power to disturb.

2. The appellant complains of a large number of alleged errors in the rulings of the court on the admission and rejection of testimony. There are only a few of these which we think justify special notice. The plaintiff testified to having employed surveyor Buckman to run some lines for him for the purpose of ascertaining the proper line of division between his lands and those of the defendant. The witness stated that he was present when Buckman made the survey, and confined his testimony to the fact of the employment of Buckman and what the latter had done in the matter of marking the corners, etc., as established by said survey. Upon cross-examination the witness was asked if Buckman was "the only surveyor who surveyed that land for you, and who ran the lines you have testified to?" An objection that the question was not cross-examination was sustained. The witness had not been questioned on his examination-in-chief as to any other survey having been made at his request than the one concerning which he testified. We can understand how such a question, if its purpose is the impeachment of the witness, or laying the foundation therefor, might be proper on cross-examination; but the question here was not in form to imply any such purpose. If the defendant deemed it important to show that the witness had caused other surveys to be made than the one to which he testified in chief he was not at liberty to do so by making the plaintiff his own witness before the latter had closed his case. He could have called him for that purpose, had he desired to do so, upon the presentation of his defense. Counsel declares that a more pertinent question could not have been asked in cross-examination of the witness in view of his direct testimony.

It is true that the right of cross-examination should be given considerable latitude or not be restricted where it is apparent that it will accomplish some important purpose and is not carried beyond the scope of the examination-in-chief. The power of cross-examination is one of the most efficacious weapons with which truth may be pursued and discovered. The law, it must be admitted, has contrived no other method or test so productive of that result. Trial courts, therefore, in the exercise of the discretion committed to them as to the extent of the cross-examination, should, for the sake of the discovery of the truth of a disputed fact, give it full range for that purpose, and yet the discretion of which we speak should never be abused, or given such elasticity as to permit an adversary party to prove his own case under the guise of cross-examination, by thus propounding questions which are neither directly nor collaterally related to the subject matter of the original examination. The truth sought by a cross-examination must, of course, be in respect of and limited to the material matters to which the witness has testified in chief, and when such examination transcends that limitation and purpose, it ceases to be cross-examination. It does not appear what defendant's purpose was in asking the question, but whatever its purpose, the form in which it was put rendered it, in our opinion, not pertinent cross-examination, and the court's ruling thereon was not erroneous.

3. The written agreement to which we have referred as having been entered into by and between the plaintiff, the defendant and the Lights, and which was received in evidence, was objected to by appellant because it had been altered in some respects. The instrument upon its face presented evidence of having been at some time altered after it was written. This objection having been made, the burden was upon plaintiff to explain or account for such alterations, if they involved a part thereof material to the question in dispute. (Code Civ. Proc., sec. 1982.) The plaintiff was, therefore, questioned as to the alterations, and testified that the name "Dewoody" had been inadvertently and unnecessarily written in the agreement twice, and that the erasure of the name in one place was made before the agreement was signed. Plaintiff also testified, and likewise his son, William A. Manuel, that after the agreement was signed he observed that the first figure of the number "11," inserted in said

agreement as indicative of the dimensions of one of the "witness trees," had been written in such manner as to give it the appearance of a figure "4," which would have made the number read "41" instead of "11." The son of plaintiff, upon discovering the apparent mistake, changed the figure so that it conformed, as he declared, to what it was intended to be and what was understood to be the dimensions of the tree by the parties when the agreement was executed. The location of the tree was definitely fixed in the agreement by descriptive reference to other monuments and its distance therefrom, and was marked "B. T." by the parties, so that, whatever might have been its dimensions, it was thus clearly capable of identification as the "witness tree" to which the parties had reference when making the agreement. This erasure was, therefore, in our opinion, immaterial. The other erasure was, as observed, shown to have been made previous to the signing of the agreement and in any event immaterial. No attempt was made by the defendant to contradict the explanation of the erasures by plaintiff until the defendant took the stand in his own behalf. He said that all the erasures were made subsequent to the signing of the instrument. But the proper time for him to have offered this testimony upon the point was when the question of the admissibility of the document was before the court for determination. And even so, the court's conclusion from the evidence upon that issue would be binding here, unless, of course, it appeared that it was admitted by the plaintiff that he had without the consent of the other parties altered the agreement in some part material to the question in controversy subsequent to the execution of the instrument, or the evidence accounting for material alterations was such as to enable us to say that, as a question of law, it would not support the conclusion of the court.

4. The witness Doda was permitted, over an objection by defendant, to state that during a conversation with appellant the latter, at a time when the fence built by respondent was still intact, said that he (appellant) had all the land that belonged to him. The deduction from this statement by appellant was that the fence constructed by respondent was, under appellant's belief, then on the correct dividing line of the lands of the parties. The evidence while, of course, furnishing only a circumstance and is not conclusive upon the

point to which it related, was undoubtedly admissible as a declaration against the interest of the defendant. (Code Civ. Proc., sec. 1870, subd. 2.)

5. Nor was error committed in the refusal of the court to admit in evidence a paper purporting to be a notice served on the plaintiff by the defendant through one Scott, then a constable, commanding the respondent to restore a fence, charged to have been removed by him, to "its proper place." The notice was signed by the defendant and a certificate attached to it by Scott, setting forth that the same had been served by him on the plaintiff. The testimony disclosed the fact that Scott had died previously to the time of the trial. If the notice was proper testimony for any purpose, the document was nevertheless inadmissible. The service of the notice was not an act within the constable's official duties under the law, and his purported certificate was not even *prima facie* evidence of the fact of service. This document was shown to the plaintiff when he was on the witness-stand and he denied that he had ever been served by anyone with such a notice. It was then that it was offered in evidence by counsel for appellant. The court's ruling excluding the alleged notice was proper.

6. There appears in the transcript certain affidavits of defendant, his son, Thomas Flynn, and Rollo Fay, deputy recorder of Napa county, which affidavits, it is claimed in the briefs of appellant, were used on the hearing of the motion for a new trial. The affidavit of defendant is to the effect that he was surprised at the testimony given for the plaintiff of some of the witnesses; that he did not anticipate such testimony and was, therefore, unprepared to meet it at the trial, and alleged that if a new trial were granted he could produce evidence to contradict it, etc. The other affidavits set forth facts in opposition to those testified to by said witnesses which affiants deposed that they would give in evidence upon another trial of the cause. These affidavits are not incorporated in a bill of exceptions, but counsel claim that they can nevertheless be considered on this appeal, because of a stipulation entered into between the attorneys representing both parties, to the effect "that the foregoing printed pages shall constitute the Transcript on Appeal in the above-entitled cause, and that the appeals may be heard thereon," and "that the papers therein mentioned are cor-

rect copies of the originals on file in the Superior Court of Napa County, with the endorsements of the dates of filing the same,'' etc. Said stipulation appears in the transcript but not in the statement or in a bill of exceptions, and is signed by the attorneys for appellant and the attorney who tried the case for respondent and who has died since the taking of the appeal. (The present attorneys for respondent were thereafter substituted for and in the place of the deceased lawyer.) It is not clear that the stipulation includes the affidavits mentioned. But whether it does or not, we think that under the rule of this court and the decisions, the affidavits, not being incorporated in a bill of exceptions and therefore not authenticated as required by rule XXIX of this court, cannot be considered on this appeal.

In *Melde* v. *Reynolds,* 120 Cal. 237, [52 Pac. 491], there appeared in the transcript certain affidavits upon which was indorsed the following: ''Affidavits of . . . . used on hearing of the motion for a new trial. John Hunt, Judge.'' These affidavits were not incorporated in a bill of exceptions and authenticated as required by rule XXIX of the court, and it was held that they could not for that reason be considered on appeal. The court says: ''When a motion for a new trial is made upon the ground of accident or surprise, it must be made upon affidavits (Code Civ. Proc., sec. 658); but whether an affidavit was 'used on the hearing' can be determined only by the judge before whom the hearing was had, and as there is no other mode provided by law for authenticating the affidavits which may be used on the hearing of the motion, under Rule XXIX, they cannot be considered on the appeal unless they are incorporated into a bill of exceptions. (Citing *Herrlich* v. *McDonald,* 80 Cal. 472, [22 Pac. 299]; *Van Glahn* v. *Brennan,* 81 Cal. 261, [22 Pac. 596]; *Spreckels* v. *Spreckels,* 114 Cal. 60, [45 Pac. 1022]. See, also, *Skinner* v. *Horn,* 144 Cal. 279, [77 Pac. 904].) A bill of exceptions, settled as directed by section 651 of the Code of Civil Procedure, would contain all the affidavits upon which the judge acted in making the order, but the indorsement by him upon certain affidavits that they were used at the hearing of the motion does not make them the record of the papers upon which the motion was heard, since it does not appear thereby that these were all the papers used at the hearing.'' (Citing *Shain* v. *Eikerenkotter,* 88

Cal. 13, [25 Pac. 966]. See, also, *San Diego Sav. Bank* v. *Goodsell,* 137 Cal. 420, [70 Pac. 299], et seq.)   In that case, it is to be noticed, even the indorsement upon the affidavits by the judge who heard the motion that they had been used on the hearing, they not having been incorporated in a bill of exceptions, is held to be insufficient to meet the requirements of the rule.   Certainly, where, as here, there is nothing more than the mere stipulation of the attorneys showing that they had been so used could not authorize their consideration upon appeal.   Moreover, it does not thereby or otherwise appear that they constituted all the affidavits and papers used on the hearing.

We find no error in the record prejudicial to the defendant.

Judgment and order are affirmed.

Burnett, J., and Chipman, P. J., concurred.