[Civ. No. 356.    Third Appellate District.—September 5, 1907.]

## DANIEL MEYER et al., Copartners, etc., Respondents, v. O. A. LOVDAL, Appellant.

PROMISSORY NOTE—PARTNERSHIP PAYEE—PUBLICATION OF CERTIFICATE—ACKNOWLEDGMENT—CONSTRUCTION OF CODE.—Construing section 2460 of the Civil Code, requiring the publication of a filed certificate of partnership, in connection with section 2468, requiring the certificate filed to be signed by the partners and acknowledged before some officer, and published as required by section 2466, and making a compliance with the provisions of the code a condition of the right to maintain an action, the purpose of the·acknowledgment seems to be to identify the signatures, and the main purpose of publication is to show the designation of the partnership, the full names of the parties and their residences, to which the contents of the acknowledgment add nothing, and an affidavit of publication of a signed certificate showing those facts, to which was appended the statement ''Duly acknowledged'' on a specified date, before a designated notary public, and giving the date and certificate of filing, sufficiently complies with the purpose of the statute; and where the original certificate was introduced, and shows due acknowledgment when filed, the affidavit of publication is sufficient to sustain an action upon a note to the partnership.

ID.—ALTERATION OF NOTE—MATURITY—TIME OF CHANGE—EXPLANATION —PROVINCE OF TRIAL JUDGE—REVIEW UPON APPEAL.—It is only where a material alteration of a note appears to have been made ''after execution'' that the code requires it to be explained by the party producing it before its admission in evidence. Where the maturity of the note was changed from ''thirty days'' to ''six months'' after date, it was within the province of the trial judge to determine upon inspection of the note whether so material a change required explanation, and if he was satisfied that the change did not appear to have been made after execution, and that the handwriting was the same, his conclusion in admitting the note without explanation will not be disturbed upon appeal, where the record does not show the contrary, but clearly shows that by subsequent undisputed testimony the change was made at defendant's request before signing or delivering the note.

6 Cal. App.—24

ID.—FRAUD OR ILLEGALITY IN INCEPTION OF NOTE—GAMBLING CONSID-
ERATION—PURCHASE FOR VALUE BEFORE MATURITY—BURDEN OF
PROOF.—Where the note in its inception was given for money lost
at gambling, or was fraudulently obtained, the burden is cast upon
indorsees to show that they purchased the note for value before
maturity, in the usual course of business, and when this is shown,
the burden is cast upon the maker to show that the indorsees took
with notice of his equities.

ID.—EVIDENCE PROPERLY EXCLUDED—BURDEN NOT SUSTAINED.—It was
proper to exclude questions asked of defendant as a witness in
his own behalf as to whether he did anything to stop payment of the
note, or notified the Sacramento banks, or published notice in the
Sacramento papers with reference to the manner of procuring the
note, where there was no offer or attempt to show that any of these
steps came to plaintiffs' notice, or that it could reasonably be pre-
sumed that they were known to them.

ID.—UNCONTRADICTED EVIDENCE FOR PLAINTIFFS—INSTRUCTION DIRECT-
ING VERDICT.—Where the evidence for plaintiffs clearly proved with-
out contradiction that the note was purchased by them for value
before maturity, and there was no evidence tending to show that
plaintiffs had any knowledge or notice of want of consideration or
fraud in the inception of the note, the court properly directed
the jury by an instruction to return a verdict for the plaintiffs
for the face of the note with interest.

ID.—POSSIBLE VERDICT AGAINST EVIDENCE—DUTY OF COURT.—Where,
if the case had gone to the jury, and a verdict had been given
for the defendant, it would have been the duty of the court to set
the verdict aside, it is not error for the court to direct the verdict.

APPEAL from a judgment of the Superior Court of Sac-
ramento County, and from an order denying a new trial.
Peter J. Shields, Judge.

The facts are stated in the opinion of the court.

Chauncey H. Dunn, and Solon Hall, for Appellant.

The affidavit of publication of the certificate of partnership
was inadmissible. (Civ. Code, secs. 1188, 2468; *Fogarty* v.
*Finley*, 239-245.) The court erred in receiving the note in
evidence without explanation of the alteration. (Code Civ.
Proc., sec. 1892; *Gillard* v. *Jackman*, 26 Cal. 85, 85 Am. Dec.
172; *Corcoran* v. *Doll*, 32 Cal. 89; *Roberts* v. *Unger*, 30 Cal.
676; *Miller* v. *Luco*, 80 Cal. 257, 22 Pac. 195; 1 Ency. of Ev.,
p. 813.) The court erred in refusing proof of public notice of
the fraudulent procurement of the note from the defendant for

an illegal consideration. (*Graham* v. *Larimer*, 83 Cal. 179, 23 Pac. 286.) The note being illegal and void, as between the parties and others having notice (*Bryan* v. *Mead*, 1 Cal. 441; *Carrier* v. *Brannan*, 3 Cal. 328; *Gridley* v. *Dow*, 57 Cal. 78, 40 Am. Rep. 110), any circumstances to invite inquiry would require the submission of the question to the jury whether the plaintiffs knew the facts. (*Sinkler* v. *Siljan*, 136 Cal. 356, 68 Pac. 1024; 4 Am. & Eng. Ency. of Law, 2d ed., pp. 300, 301; *Jordan* v. *Grover*, 99 Cal. 195, 33 Pac. 889; 1 Daniel on Negotiable Instruments, 3d ed., sec. 815; *Roth* v. *Colvin*, 32 Vt. 125; *Cunojaris Nat. Bank* v. *Diefendorf*, 123 N. Y. 191, 25 N. E. 402; *Cheever* v. *Pittsburgh S. & L. E. R. Co.*, 150 N. Y. 59, 55 Am. St. Rep. 646, 44 N. E. 701; *Murry* v. *Lardera*, 2 Wall. 121; *Griffith* v. *Shipley*, 74 Md. 591, 22 Atl. 1107; *Goodrich* v. *McDonald*, 77 Mich. 486, 43 N. W. 1019; *Gould* v. *Stevens*, 43 Vt. 125, 5 Am. Rep. 265; *Merrill* v. *Pacific Transfer Co.*, 131 Cal. 582, 63 Pac. 915.) Notice may be constructive. Facts putting upon inquiry or the means of knowledge are sufficient. (Civ. Code, sec. 19; *Lady Washington Consolidated Co.* v. *Ward*, 113 Cal. 482, 45 Pac. 809; *Shain* v. *Sresovich*, 104 Cal. 402, 38 Pac. 51; *Prouty* v. *Davis*, 118 Cal. 258, 50 Pac. 380; *Tyman* v. *Kern*, 119 Cal. 447, 51 Pac. 693; *San Diego Land & Tim. Co.* v. *La Preso School Dist.*, 122 Cal. 98, 54 Pac. 528; *Wood* v. *Carpenter*, 101 U. S. 135, 141; *Merrill* v. *Pacific Transfer Co.*, 131 Cal. 582, 63 Pac. 915.)

Samuel Rosenheim, and Grove L. Johnson, for Respondents.

The statute does not require that the certificate of acknowledgment shall be published with the certificate as part of it. (Civ. Code, secs. 2466, 2468.) The meaning of publication is fixed by both sections under section 2466. The acknowledgment is not required to be in any particular form. (*Fabian* v. *Callahan*, 56 Cal. 159.) There was no transaction between defendant and the plaintiffs. (Civ. Code, sec. 2468; *Sullivan* v. *Latimer*, 38 S. C. 158, 17 S. E. 701, 704; *Pendleton* v. *Cline*, 85 Cal. 142, 24 Pac. 659.) The altered note was properly received by the court without explanation, when the alteration did not appear on the face to have been after execution. (*Stayner* v. *Joyce*, 120 Ind. 99, 22 N. E. 89; *Yakima Nat. Bank* v. *Knipe*, 6 Wash. 348, 33 Pac. 834, 835;

*Franklin* v. *Baker,* 48 Ohio St. 296, 29 Am. St. Rep. 547, 27 N. E. 550; *Wilson* v. *Hayes,* 40 Minn. 531, 12 Am. St. Rep. 754, 42 N. W. 467, 4 L. R. A. 196; *Dorsey* v. *Conrad,* 49 Neb. 443, 68 N. W. 645; *Stillwell* v. *Patton,* 108 Mo. 352, 18 S. W. 1075; *Cass County* v. *Am. etc. Bank,* 9 N. Dak. 263, 83 N. W. 12; *Gunkel* v. *Seiber,* 27 Ky. Law Rep. 455, 85 S. W. 733; *Hanrick* v. *Patrick,* 119 U. S. 156, 172, 7 Sup. Ct. Rep. 147; *Hunt* v. *Gray,* 35 N. J. L. 227, 10 Am. Rep. 232; *North River Meadow Co.* v. *Christ Church,* 22 N. J. L. 624, 53 Am. Dec. 258; *Ex parte Perkins,* 29 Fed. 900.) The court properly directed a verdict for plaintiff. (*Morton* v. *Ward,* 69 Cal. 129, 10 Pac. 276; *Gately* v. *Campbell,* 124 Cal. 520, 57 Pac. 567; *Chenery* v. *Palmer,* 6 Cal. 119, 65 Am. Dec. 493.) Circumstances putting upon inquiry cannot apply to notice of illegal consideration to a prior purchaser for value. (*Sinkler* v. *Siljan,* 136 Cal. 356, 68 Pac. 1024; *First Nat. Bank* v. *Hammond,* 104 Mo. App. 403, 79 S. W. 493; *Second Nat. Bank* v. *Weston,* 161 N. Y. 520, 76 Am. St. Rep. 283, 55 N. E. 1080; *Setzer* v. *Deal,* 135 N. C. 428, 47 S. E. 466; 7 Cyc. 944-946; *Hotchkiss* v. *Bank,* 21 Wall. 354, 359.)

CHIPMAN, P. J.—Action on a promissory note alleged by defendant to have been fraudulently obtained from him by the payee. Plaintiffs claim to be the purchasers thereof in good faith before maturity and for value. The court took the case from the jury and directed a verdict for plaintiffs for the amount of principal and interest. Defendant appeals from the judgment and from the order denying his motion for a new trial. Plaintiffs constitute a copartnership doing a banking business in San Francisco under the name and style of Daniel Meyer.

1. It is urged that plaintiffs did not comply with the law as declared in sections 2466 and 2468 of the Civil Code, under which persons doing business by a designation that does not disclose the names of all the partners interested therein are required to file with the clerk of the county a certain certificate as in said sections pointed out and cause it to be acknowledged and published. The certificate of the copartnership was introduced without objection and showed due acknowledgment when filed. The affidavit of publication was next offered and showed publication of the certificate for the required period and the following statement appended there-

to: "Duly acknowledged on the 20th day of October, 1891, before Louis Meininger, a Notary Public, in and for the City and County of San Francisco. Indorsed: Filed October 20, 1891. Wm. J. Blattner, Clerk, by John H. Harney, Deputy Clerk." This affidavit of publication was also filed in the office of the clerk of said city and county.

The objection to the affidavit was that the statute requires the certificate to be acknowledged and that when acknowledged it becomes part of the certificate and is filed with the certificate; that the publication was insufficient because the full acknowledgment was not published with the certificate and the certificate was therefore irrelevant, immaterial and incompetent. The court overruled the objection.

Section 2466, Civil Code, provides that partners doing business under a designation as in this case: "Must file with the clerk . . . a certificate stating the names in full of all the members of such partnership and their places of residence, and publish the same for once a week for four successive weeks in a newspaper published," etc. Section 2468 provides: "The certificate filed with the clerk, as provided in section twenty-four hundred and sixty-six, must be signed by the partners and acknowledged before some officer. . . . The certificate must be filed and the publication designated in that section must be made. . . . Persons doing business as partners contrary to the provisions of this article shall not maintain any action upon or on account of any contracts made or transactions had in their partnership name . . . until they have first filed the certificate and made the publication herein required." The claim of appellant is that the certificate is not complete until signed and acknowledged by all the partners; that the acknowledgment is a necessary part of the certificate and also a necessary part of the publication. Section 2466 says that the certificate therein mentioned must be published, but this section does not require any acknowledgment to complete the certificate. Section 2468 provides that the certificate referred to in section 2466 must be signed by the partners, and acknowledged before some officer authorized to take the acknowledgment of conveyances of real property, and it also provides that the certificate must be filed, and the publication designated in section 2466 must be made. It is not entirely clear whether, reading the two sections together, the legislature meant to require the publication of the

certificate as acknowledged (sec. 2468) or as designated in section 2466. It seems to us, however, that the purpose of the statute is fully met by the publication of the certificate and a statement, as was done here, showing that it was acknowledged before such an officer as the statute refers to and was filed, giving the date. The purpose of the acknowledgment was probably to authenticate the genuineness of the signatures. The principal facts of which the certificate was intended to give publicity were the designation of the partnership, the full names of the partners and their residences. The acknowledgment adds nothing to the facts required to be shown by the certificate and we think a reasonable construction of the two sections justifies us in holding that the publication was sufficient. It was held in *Fabian* v. *Callahan*, 56 Cal. 159, that no particular form of acknowledgment is required by the code.

2. It is urged that the court erred in receiving in evidence the note over defendant's objection. The note was signed by defendant and made payable to F. V. Allen or order and was dated "Sacramento, Feb. 15th, 1904," and reads: "Thirty days after date without grace I promise to pay," etc. The words "thirty days" show that a pen was drawn through them and directly thereunder the words "Six months" written. It is indorsed as follows: "Arbuckle, Cala., Feb. 18th, 1904. I hereby assign the within note to C. S. Allen for 4,000. F. V. Allen. For value received I hereby sell, transfer and assign the within note to A. Lindsley. C. S. Allen." Then follow the following indorsements: "A. Lindsley, F. W. Voogt, Marshal A. Frank." The only objection argued in the brief at this point is that plaintiff should have explained the alteration as to the maturity of the note before offering it, and that it was error to admit it without such explanation. In many states it is held that an apparent alteration is presumed, in the absence of any explanation, to have been made simultaneously with or before the delivery of the instrument and hence no explanation is required. In other states it has been held that there is no presumption either way; and in still others that the presumption is that the alteration was made after delivery. (See cases collected in 1 Ency. of Ev., p. 810 et seq.) In this state we have a statute on the subject as follows: "The party producing a writing as genuine which has been altered, or appears to have been

altered, after its execution, in a part material to the question
in dispute, must account for the appearance or alteration.''
The section then points out how he may do this, and when
done ''he may give the writing in evidence, but not other-
wise.'' (Code Civ. Proc., sec. 1982.) In the present case
it is alleged in the answer that the alteration was made after
delivery and that plaintiff took the note after its maturity,
*i. e.,* more than thirty days after its execution. The alteration
then was material to the question in dispute. We find no
case in our reports and none is cited where the meaning of
this section, in the particular now under consideration, is
clearly stated. When the instrument is offered without ex-
planation as to an apparent alteration, how is it to be known
whether or not it *''appears* to have been altered *after its exe-
cution''* unless this may be determined, in the first instance,
by an inspection of the instrument itself and the alteration
shown therein? The trial judge must, it seems to us, deter-
mine when the offer is made whether the alterations are such
as, in his judgment, call for explanation. If he admits the
instrument and nothing appears in the record to show that the
judgment exercised by the trial judge was improper or not
justified, it is the duty of the appellate court to accept his
conclusion. We must assume that he had the instrument be-
fore him and scrutinized its appearance in order to determine
whether it was altered after its execution, and unless the
record brought up for review shows that he acted without
warrant his determination is conclusive upon us. We have
nothing before us but a photographic copy of the note, and
we can discover nothing from it that would suggest unauthor-
ized action by the trial judge. The erasure shows that it
was made with a pen and the words ''Six months'' appear
to be in the same handwriting as the other written parts of
the note. It clearly appeared from the undisputed testimony
later along in the trial that the change from thirty days to
six months as the date of maturity of the note was made at
defendant's request and before he signed it and that as thus
changed it was delivered to the payee.

3. Defendant, as a witness on his own behalf, was asked
whether he did ''anything in reference to stopping payment
of the note''; also whether he ''notified the banks of Sacra-
mento that the note was fraudulent and void''; also whether
he ''had notices published in any of the daily papers in Sac-

ramento with reference to the manner in which this note was procured.'' The court sustained objections to the questions. It was not shown or attempted or offered to be shown that any of these steps came to plaintiffs' notice or that it could reasonably be presumed that they were known to plaintiffs. The ruling was not erroneous.

4. At the close of the evidence, on motion of plaintiffs, the court instructed the jury as follows: ''Inasmuch as there is no evidence that the plaintiffs had any knowledge or notice of any want of consideration or fraud in the inception of the note sued upon, and the evidence is uncontradicted that the plaintiffs purchased said note for value before maturity, the plaintiffs are entitled to judgment herein and you are instructed to return a verdict for the plaintiffs for the face of the note . . . with interest. . . . '' It is contended that the court erred in thus instructing the jury. It appears from the uncontradicted evidence that the note was given at its date in discharge of a debt incurred in a game of poker played between the maker, Lovdal, and the payee, F. V. Allen; that the note was partly printed and that the written portion, except the signature, was filled in by one Albert Lindsley, the only person present at the game except the two players; that it was first written payable thirty days after date, but at the request of Lovdal, who wanted longer credit, the change of time in the maturity of the note was made by Lindsley before the note was signed by Lovdal. The subsequent history of the note is immaterial except as to plaintiffs' connection with it.

It is contended by defendant that it having been shown that the note was fraudulent the burden was on plaintiffs to show that they purchased the note before maturity in good faith, for value, in the usual course of business and under circumstances which created no presumption that they knew the facts that impeach its validity. (Citing *Jordan* v. *Grover,* 99 Cal. 194, [33 Pac. 889], and *Eames* v. *Crosier,* 101 Cal. 260, [35 Pac. 873].) The true rule, as we conceive it, is found in the second of these cases and also in *Sinkler* v. *Siljan,* 136 Cal. 356, [68 Pac. 1024]. (See, also, *Bell* v. *Pleasant,* 145 Cal. 410, [104 Am. St. Rep. 61, 78 Pac. 957].) In *Eames* v. *Crosier* the note was indorsed in blank and delivered by the payee, Bandholt, and again delivered to one Runels, who, before maturity thereof, assigned and delivered the same to

one Talmage and the latter afterward sold and delivered the
note to plaintiff, Eames, as we understand the facts, after its
maturity.   The trial court found that Talmage "purchased
and received and paid for the note in good faith without no-
tice," and this finding was challenged as not supported by
the evidence.   It was admitted that both Talmage and plain-
tiff acquired the note for value, but it was claimed that
proof on the part of defendants that the note was procured
from defendants through fraud cast upon plaintiff the bur-
den of showing that the plaintiff or Talmage purchased with-
out notice of the equities set up in the answer.   The doctrine,
upon the facts, is thus stated: "Upon proof of fraud in the
inception of the note, the burden is cast upon the indorsee
to show that he is an innocent holder.   This the latter may
do by showing that he purchased the note before maturity,
or from an innocent indorsee for value, in the usual course of
business.   When this is done, unless the evidence shows that
the note was taken by the plaintiff under circumstances cre-
ating the presumption that he knew the facts impeaching
its validity, the burden is cast upon the defendant to show,
if he would defeat the plaintiff in his action, that the latter
took the instrument with notice of the defendant's equities."
Again, speaking of plaintiff's burden, it is said: "This bur-
den is discharged and a *prima facie* case is made in his favor,
when he shows that he purchased for value in the usual course
of business."   Mr. Daniel thus states the rule: "He [the
indorsee] makes out a *prima facie* case by proving that the
instrument was indorsed to him for value before maturity.
Nothing else appearing, a presumption arises that he pur-
chased the note in good faith, without notice of fraud, be-
cause it is not likely that he would give full value for a note
which he believed to be fraudulent, taking the hazard upon
himself, and because it would be difficult to prove good faith
in any better way. . . . Unless there were circumstances
which seemed to bring home to him notice of the fraud or
illegality imputed, the requirement of further proof than the
giving of fair value seems unreasonably harsh and exacting."
(1 Daniel on Negotiable Instruments, 4th ed., sec. 819.)
The circumstances attending the purchase must be something
more than "such as to invite inquiry on the part of the pur-
chaser" (*Sinkler* v. *Siljan*, 136 Cal. 356, [68 Pac. 1024]);
they must, as was said in *Eames* v. *Crosier*, 101 Cal. 260, [35

Pac. 873], show ''that the note was taken by the plaintiff un-
der circumstances creating the presumption that he knew the
facts impeaching its validity,'' otherwise the burden is upon
the defendant to show that plaintiff ''took the instrument
with notice of the defendant's equities.'' It was said in *Col-
lins* v. *Gilbert,* 94 U. S. 753, that to defeat the rights of a
*bona fide* holder of a promissory note, claimed to have been
procured by fraud, it must be shown, either directly or by
circumstances, that he had notice of such infirmity. ''Proof
of such facts and circumstances as would have put a reason-
able man upon inquiry in relation thereto is not sufficient to
constitute a defense to a suit by the holder.'' In *Bell* v.
*Pleasant,* 145 Cal. 410, [104 Am. St. Rep. 61, 78 Pac. 954],
it was said in the opinion by Mr. Justice Shaw: ''The in-
dorsement carries the legal title to the note and vests it in
the indorsee, and if it is shown by him that he bought for a
valuable consideration before maturity. his legal title cannot
be divested nor his right to recover defeated, without the
proof which shows his purchase to have been fraudulent,
namely, that he had notice of the lack of consideration or
of the fraud, or other defense of the maker.''

It appeared, without conflict, that plaintiffs purchased the
note in due course and paid its face value, including accrued
interest to date of purchase, and under circumstances entirely
devoid of semblance of knowledge or notice of the infirmity
in the note at its inception. (See Civ. Code, secs. 3122-3124.)
We do not feel called upon to state these circumstances in
detail. Aside from what appears on the face of the note,
there were no circumstances that would give rise to any pre-
sumption of knowledge . or notice to plaintiffs that the note
had its origin in a gambling game. The change of the date
of its maturity as appearing on the note was fully explained
without conflict, and it appeared that the note was purchased
for the firm by one of the partners on the credit of Voogt and
Frank, two of the indorsers, as a favor to Frank rather than
for any profit, and it was purchased but a short time before
maturity when only a small amount of interest would accrue
on it before maturity. Both Voogt and Frank were known
to the firm and had borrowed money from it and were re-
garded by the firm as men of considerable means and as en-
tirely responsible for the amount involved. Defendant re-
counts many independent circumstances from which he claims

that sufficient appeared to require the case to go to the jury and that the court had no right to take their consideration away from the jury. It would needlessly prolong this opinion to note these circumstances and show wherein they fail to present facts material in determining whether plaintiffs successfully met the burden cast upon them by the law. The plaintiffs, in our opinion, went further in their explanation of good faith in the transaction than they were required to go, under the rule above stated, and that, at the close of the evidence, there was no material controverted fact to go to the jury of which it can be said that it gave rise to a presumption that plaintiffs knew the facts impeaching the validity of the note; nor were the facts such as would have justified a reasonable inference by the jury that plaintiffs had any such knowledge. Had the case gone to the jury and a verdict been given the defendant, it would have been the duty of the court to set the verdict aside. This being so, as we view the evidence, it was not error for the court to direct the verdict. (See cases cited in Spelling's New Trial, vol. 1, sec. 329.)

No other alleged errors are noticed in defendant's brief. The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.