[Civ. No. 3550.   Second Appellate District, Division Two.—June 11, 1921.]

## E. M. KING, Respondent, v. BARNEY TARABINO, Executor, etc., Appellant.

[1] ALTERATION OF INSTRUMENTS — MEANING OF "EXECUTION" — CODE SECTION CONSTRUED.—The legislature intended that the word "execution," as used in section 1982 of the Code of Civil Procedure, which provides that "The party producing a writing as genuine which has been altered, or appears to have been altered, after its execution, in a part material to the question in dispute, must account for the appearance or alteration. . . . If he do that, he may give the writing in evidence, but not otherwise," as the equivalent of "signing," or "signature."

[2] ID.—EVIDENCE — ALTERATION OF SIGNATURE — MATERIALITY OF. — Where a check, which, other than the signature of the maker, was entirely in the handwriting of the payee, and which was signed "Owen Aparment by John Tarabino," showed on its face that the words "Owen Aparment" were stricken out by several straight lines drawn longitudinally through them, leaving standing only the words "By John Tarabino," such facts were sufficient to show an alteration of the instrument "after its execution," within the meaning of section 1982 of the Code of Civil Procedure, which was

material to the question in dispute requiring an explanation thereof before the instrument could be used in evidence in an action against the executor of the estate of said John Tarabino.

APPEAL from a judgment of the Superior Court of Los Angeles County. Paul J. McCormick, Judge. Reversed.

The facts are stated in the opinion of the court.

Arthur W. Eckman, T. K. Hulme and Frank Snyder for Appellant.

Mattison B. Jones and Linneman & Linneman for Respondent.

WORKS, J.—This is an action to recover on a check for five thousand dollars. Defendant appeals from a judgment for plaintiff. The cause was tried by a jury.

Two brothers, John and Barney Tarabino, owned and operated an apartment house known as the Owen Apartments, John, although a man of little education, being the manager of the place. The funds of the business were deposited in bank in an account against which checks were drawn over the signature, "Owen Apartments, By John Tarabino." John Tarabino also carried an account in bank in his own name in which his individual funds were deposited. The check which is the basis of the action was originally signed, in the handwriting of John Tarabino, as follows: "Owen Aparment, By John Tarabino." All other written matter on the instrument, the date, respondent's name as payee, and the amount, both in figures and words, was in the handwriting of respondent. The words "Owen Aparment," in the signature, were stricken out by several straight lines drawn longitudinally through them, so that the signature was finally left, below the expunged words, thus: "By John Tarabino." John having died, the check was, two months after that event, presented for payment by respondent at the bank in which his individual account was kept, but payment was refused. A creditors' claim, based upon the paper, was next presented to the executor of John's estate and was rejected. The present action was then commenced against the executor. Under stipulation of the parties we have before us the original check, a photo-

graphic enlargement of it showing a surface about one and one-half times its length, and a second photographic enlargement to about twice its length.

Upon proof of the genuineness of the signature, "By John Tarabino," and without any explanation of the alteration by means of which the words "Owen Aparment" had been expunged, and over the objection of appellant, the trial court received the check in evidence. It is contended that the ruling was error.

In most jurisdictions the question whether an alteration of a written instrument must be explained before it is admissible in evidence depends upon the time when the alteration was made, having regard to the *delivery* of the instrument, although in the law of those places the time spoken of is the time of the *execution* of the instrument, the latter term generally being held to include both *signing* and *delivery* (2 Corpus Juris, 1223) ; and "In many states it is held that an apparent alteration is presumed, in the absence of any explanation, to have been made simultaneously with or before the delivery of the instrument and hence no explanation is required. In other states it has been held that there is no presumption either way; and in still others that the presumption is that the alteration was made after delivery" (*Meyer* v. *Lovdal,* 6 Cal. App. 369, [92 Pac. 322]). All of these rules of law have been supplanted in this state, formally, by section 1982 of the Code of the Civil Procedure; and we say "formally" because the extent to which they have been supplanted, actually and substantially, depends upon a construction of the section. The enactment provides that "The party producing a writing as genuine which has been altered, or appears to have been altered, after its execution, in a part material to the question in dispute, must account for the appearance or alteration." After setting out several ways in which an alteration may be accounted for, the section concludes with a provision that, if the party producing a writing does account for an alteration in it, "he may give the writing in evidence, but not otherwise."

The facts of this case require us to determine whether the legislature intended the word "execution," as employed in section 1982, to include delivery, or whether it intended the expression as synonymous with signing, only. The word

"execute," in strict legal parlance, usually, but not always, includes delivery; while, in ordinary lay language, "to execute" is often regarded as the equivalent of "to sign" (Words & Phrases, 1st and 2d eds., tit. "Execute"). Which sense did the legislature intend in section 1982? A potent guide to a solution of the question will be found in this undoubted fact: If it were intended that the time of the alteration, with reference to the execution, were ever to be ascertained from the face of an instrument alone, then "execution," in the section, means "signing." This is necessarily true, for the actual *time* of delivery of an instrument, whatever recitals it may contain as to delivery, cannot by any possibility be determined from an inspection of it. That circumstance always must be ascertained through the medium of evidence extraneous to the writing. Further, even if evidence *dehors* a given writing were received for the purpose of fixing the time of its delivery, we can conceive of no circumstances under which an inspection of it would show whether an alteration of its language were made before or after the time of delivery thus ascertained.

With this irrefragable premise in mind, let us take a glance at the section itself, in an endeavor to ascertain whether, inherent to it, there may be found an index to its construction. The enactment deals with two classes of instruments, those which have been altered after their execution and those which *appear* to have been altered after that event. A certainty of alteration after execution is contemplated in providing for the first class, but only the appearance of alteration in naming the second. Is not the section so framed as to indicate that the "appearance" is to be gathered from the face of the paper? The language of the law is not so couched as to give strength to the view that the possibility of alteration is to appear from extrinsic evidence. But there is another clause of the enactment which conduces to the view which we are inclined to take of its meaning from its very terms, unaided by other considerations. Where the instrument appears to have been altered after execution, the party producing it "must account for the appearance." Does not that language show that the thing he is to account for is the "appearance" on the face of the writing?

There are, however, most weighty considerations, apart from the language of the section itself, leading to the conclusion that the legislature intended the word "execution" as the equivalent of "signing." While the question has never been directly decided, the courts of review of the state have often indicated that to be the proper construction of the law, and we propose to refer to the many cases bearing on the question, even if some of them do touch but lightly on the point. Taking them all, it will appear that a mass of matter has been accumulated upon the subject. Wherever italics are used it will be understood that they are our own.

We first cite a case which antedates the code—*Roberts* v. *Unger*, 30 Cal. 676. A change had there been made in the description in a deed. "The plaintiffs then introduced evidence tending to show that the erasure and interlineation had been made at the time the deed was drawn and before *signing.*" The syllabus is to the effect that "An alteration in a deed by an erasure of a figure and the interlineation of another is not sufficient to prevent it from being received in evidence where testimony is introduced tending to show that the alteration was made before the deed was *signed.*" The weight of this case is very slight, almost negligible, but we note it as a part of the judicial history of the state on the question. The syllabus, while it is, of course, in no sense authority, has stood all these years, however, as suggesting to bench and bar that the signing is the thing. The reference is not to delivery, nor even to signing and delivery.

We next mention *Corcoran* v. *Doll*, 32 Cal. 82. In this case the whole tenor of the opinion, taken in connection with the statement of facts, seems to indicate that the court used the word "execution" as synonymous with "signing." In addition, the situation seems to have been gathered from the face of the note, there in question, where nothing concerning delivery appeared or could have appeared.

In *Sedgwick* v. *Sedgwick*, 56 Cal. 213, the opinion is not clear, but it tends to show that the time of signature is the period to be considered in determining whether an alteration appears, within the terms of section 1982. The signature to the instrument was proved and it was then offered. This was followed by an objection to its admissi-

bility on the ground that it appeared on the face of the paper and from the testimony of the witnesses that it had been changed after its execution. The report does not show what, if any, testimony there was on the subject, and the syllabus, while not authority, is to the effect that the question was determined from the face of the writing alone.

*Miller* v. *Luco*, 80 Cal. 257, [22 Pac. 195], is decidedly in point, though the report on the subject is not full. A tax deed had been offered in evidence. The supreme court said: "The plaintiffs objected to the deed being received in evidence, on the ground that it appeared on the face thereof to have been altered in a material respect after its execution, and the court sustained the objection. We see no error in this ruling. It was fully justified by section 1982 of the Code of Civil Procedure." The syllabus, not, however, treating it as authority, is to the effect that "A tax deed which appears upon the face thereof to have been altered in a material respect after its execution is not admissible in evidence to show title in the holder thereof." The language of both opinion and syllabus is striking when we remember that nothing more could have appeared from the face of the instrument than that it was altered after *signature.*

In *Burdell* v. *Taylor*, 89 Cal. 613, [26 Pac. 1094], the court said: "The further point is made that the court erred in admitting in evidence the record of survey No. 61, because it appeared to be interlined, and no sufficient explanation given thereof. Even conceding that the objection made was sufficient, although not pointing to the particular respect in which the document was inadmissible, by stating that it was because of an interlineation, still it appears that Easkoot, the maker and recorder of the survey, showed that the interlineation was made before *execution* thereof *by him.* This was sufficient. (Code Civ. Proc., sec. 1982; *Sedgwick* v. *Sedgwick*, 56 Cal. 213.)" This case is deprived of much of its weight because of the fact that the writing in question was not one which became effective upon delivery; but the fact is noteworthy that the court used "execution" as the equivalent of "signature" and did so immediately preceding a citation of section 1982. It is also to be noted that *Sedgwick* v. *Sedgwick* is cited in support of the text.

The question of the application of section 1982 next arose in *Manuel* v. *Flynn*, 5 Cal. App. 319, [90 Pac. 463]. The court there took the extreme ground that alterations appearing from the face of an instrument to have been made after it was completely written must have been explained before the writing could be received, apparently laying aside all question of either signature or delivery. It was said: "The written agreement to which we have referred as having been entered into . . . and which was received in evidence, was objected to by appellant because it had been altered in some respect. The instrument upon its face presented evidence of having been at some time altered *after it was written.* This objection having been made, the burden was upon plaintiff to explain or account for such alterations, if they involved a part thereof material to the question in dispute. (Code Civ. Proc., sec. 1982.)"

Of all the cases bearing upon the construction to be placed on the word "execution" in section 1982, *Meyer* v. *Lovdal*, 6 Cal. App. 369, [92 Pac. 322] comes nearest the mark. The following appears in the course of the opinion: "It is urged that the court erred in receiving in evidence the note over defendant's objection. The note . . . reads: 'Thirty days after date without grace I promise to pay,' etc. The words 'thirty days' show that a pen was drawn through them and directly thereunder the words 'Six months' written. . . . The only objection argued in the brief at this point is that plaintiff should have explained the alteration as to the maturity of the note before offering it, and that it was error to admit it without such explanation. . . . In the present case it is alleged in the answer that the alteration was made after delivery and that plaintiff took the note after its maturity, i. e., more than thirty days after its execution. The alteration then was material to the question in dispute. We find no case in our reports and none is cited where the meaning of this section [1982], in the particular now under consideration, is clearly stated. When the instrument is offered without explanation as to an *apparent* alteration, how is it to be known whether or not it 'appears to have been altered after its execution' unless this may be determined, in the first instance, *by an inspection of the instrument itself and the alteration shown therein?* The trial judge must, it seems to us, determine

when the offer is made whether the alterations are such as, in his judgment, call for explanation. If he admits the instrument and nothing appears in the record to show that the judgment exercised by the trial judge was improper or not justified, it is the duty of the appellate court to accept his conclusion. *We must assume that he had the instrument before him and scrutinized its appearance in order to determine whether it was altered after its execution,* and unless the record brought up for review shows that he acted without warrant his determination is conclusive upon us. We have nothing before us but a photographic copy of the note, and *we can discover nothing from it* that would suggest unauthorized action by the trial judge.'' It is evident from the court's use of the word ''apparent,'' in this opinion, that the view of section 1982 which we have suggested above in our scrutiny of the language of the enactment was entertained by the court; that is, that the ''appearance'' to be accounted for by one offering an apparently altered writing is the ''appearance'' on the face of the writing. In fact, that view is reflected throughout the excerpt we have made from the opinion. In view of the premise we have laid down above, it is especially to be noted that the ''appearance'' is to be ascertained, at least in the first instance, from an inspection by the trial judge of the writing offered. The controlling effect of this position is manifest when we remember, to repeat, that such an inspection can never aid in determining whether an instrument has been altered after *delivery,* but that it will often indicate whether an alteration has been made after *signature.*

We mention, in passing, *Cavitt* v. *Raje,* 29 Cal. App. 659, [156 Pac. 519], and *Johnson* v. *Cordes,* 33 Cal. App. 619, [195 Pac. 1040], although they have no bearing upon the particular question under discussion. They do, however, both of them, indicate with what freedom the word ''execution'' is used, even by the courts, as synonymous with ''signing,'' or ''signature.'' That use is particularly noticeable in *Johnson* v. *Cordes.*

The last case we shall notice is *Dozier* v. *National Borax Co.,* 35 Cal. App. 612, [170 Pac. 638], for it is the latest and only remaining one on the subject. In speaking of an alteration in an agreement for the sale of stock the

court said: "The interlineation of these words in this writing *was an afterthought to its creation,* and also works a most material alteration in its terms; and having been confessedly inserted *after the execution of the writing by Dake,* the burden of accounting for it was cast upon the plaintiff producing the writing and relying upon it as genuine under the express terms of section 1982 of the Code of Civil Procedure." Such language necessarily conveys the idea that the court viewed the word "execution" in the statute as the equivalent of "signing."

[1] We conclude, not merely from the language of section 1982, but from the construction tacitly placed upon it by the courts in so many instances—and there are no cases indicating a contrary view—that the legislature intended the word "execution," as used in the enactment, as the equivalent of "signing," or "signature." What, then, is the situation in the present case? Following the guide furnished by *Meyer* v. *Lovdal,* the trial judge made an inspection of the check in order to solve the question which the objection of counsel presented to him; but he scanned it with an improper purpose in view, a purpose impossible of accomplishment. He endeavored to ascertain whether the check had been altered after its *delivery.* An inspection for such a purpose was a futility. But what does the face of the paper show upon the really material question: Was the check altered after it was *signed?* [2] There can be but one answer. John Tarabino wrote at the bottom of the paper, "Owen Aparment, By John Tarabino," thus completing, so far as the judge could ascertain from inspection, his work upon the instrument. That, but for the palpable alteration, was the signature to the check, the signature contemplated by section 1982. After that work was done some person expunged the first line of the signature, leaving standing only the words "By John Tarabino," thus, to our minds, showing a plain alteration of the instrument after execution, under the terms of the section.

In looking to the language of section 1982 to the effect that, to require explanation, an alteration must be material to the question in dispute, we have no difficulty in concluding that the one before us is within the terms of the enactment. As originally signed the check was drawn against the funds in bank of the Owen Apartments, the

funds of John and Barney Tarabino. As altered, the instrument is being pressed against the estate of John. It is obvious that the alteration was a most material one.

Several other points are made by appellant, but they need not be considered. In fact, most of them depend upon the question which we have discussed above.

The judgment is reversed and the cause is remanded.

Finlayson, P. J., and Craig, J., concurred.