[Civ. No. 15684.   First Dist., Div. Two.   Mar. 18, 1954.]

EMERY EATON et al., Respondents, v. A. A. BROCK, as Director of Agriculture etc., Appellant.

Edmund G. Brown, Attorney General, and W. R. Augustine, Deputy Attorney General, for Appellant.

Hardy, Carley & Thompson, Lewis K. Scott, Crist, Stafford & Peters and John M. Donegan for Respondents.

O'DONNELL, J. pro tem.*—This is an action for declaratory relief brought by plaintiffs Emery Eaton, doing business as Toyon Creamery, and Consumers' Cooperative Society of Palo Alto, Inc., a corporation (hereinafter called "Co-op"), against the State Director of Agriculture as defendant (hereinafter sometimes called the "Director") wherein plaintiffs seek to have the validity of a certain contract between Eaton and Co-op judicially decreed.

Plaintiff Eaton is a licensed retail milk distributor. The Co-op is a cooperative corporation organized under sections 12200-12956 of the Corporations Code. It operates a supermarket, drugstore, dry cleaning establishment, frozen food locker, service station, and a complete insurance service. The Co-op's customers participate in the profits of its enterprises which are paid to them in the form of patronage dividends at the close of each fiscal year. Of Eaton's 4,500-odd customers some 700 are members of Co-op.

On February 16, 1949, Eaton and the Co-op entered into the written contract which is the subject of the instant action. By the terms of that contract the Co-op undertook to collect and to guarantee payment of all accounts of Eaton's cus-

---

*Assigned by Chairman of Judicial Council.

tomers who were members of the Co-op, and further agreed to solicit new customers for Eaton. In consideration therefor Eaton agreed to pay Co-op the sum of $1.20 per month per customer.

In 1935 the Legislature adopted the so-called "Milk Control Act." (Agr. Code., div. 4, ch. 13, §§ 735-738.) In 1953 and after the trial of the instant case, the Milk Control Act was transferred to chapter 17 of division 6 (§§ 4200-4416) of the Agricultural Code. The declared purpose of the legislation is to stabilize the production and distribution of milk throughout the state. To that end it authorizes the State Director of Agriculture to prescribe marketing areas within the state and to establish within such areas minimum wholesale and retail prices for milk. The Director has established one such marketing area which is comprised of San Mateo County and parts of the city of Palo Alto and has set therein a minimum retail price for milk of 19½ cents per quart and a minimum wholesale price of 16½ cents per quart. Eaton's business is conducted in this marketing area. Section 4361 (formerly part of § 736.13) of the Agricultural Code provides: "No distributor shall sell to any retail store, restaurant, confectionery or other place for consumption on the premises, or to any consumer, and no retail store, restaurant, confectionery or other place for consumption on the premises, shall purchase from any distributor or sell to any consumer, any fluid milk or fluid cream, or either of them, at less than the prices as established by the director under the provisions of this article, and the use or attempted use of any method, device or transaction whereby any distributor sells or offers or agrees to sell to any retail store, restaurant, confectionery or other place for consumption on the premises, or consumer or any retail store, restaurant, confectionery or other place for consumption on the premises, buys or offers or agrees to buy from any distributor, or sells or offers or agrees to sell to any consumer fluid milk or fluid cream, or either, at a price less than that established by the director, under the provisions of this article, whether by discount, rebate, free service, advertising allowance, lease of refrigeration or other equipment, or gift, or otherwise and whether any such discount, rebate, free service, advertising allowance, lease of refrigeration or other equipment, or gift applies directly to fluid milk or fluid cream or is allowed upon or in connection with the sale or handling of any other commodity or product, is hereby prohibited."

A controversy arose between Eaton and Co-op on the one hand, and the Director on the other, as to the validity of the Eaton-Co-op contract under the provisions of the section just quoted. The Director took the position that the $1.20 per month contract rate for Co-op's services is grossly in excess of the reasonable value of those services and that therefore the contract is invalid as being a device for the sale of milk at a price less than set by the Director, under the prohibition of section 4361. Plaintiffs asserted the bona fides of the contract and the adequacy of the contractual consideration. This action to have the contract declared valid ensued.

Defendant's first contention is that the trial court erred in requiring him to assume the burden of proving the illegality of the contract. He urges that plaintiffs should have been made to carry the burden of establishing the reasonableness of the $1.20 contract rate. Defendant cites no authorities in support of this contention. Indeed, the authorities are all to the contrary. ■ Where the illegality of a contract does not appear from the face of the complaint it becomes a matter of affirmative defense that must be specially pleaded. And in such case the burden of proof is on the defendant. (*Hamilton* v. *Abadjian,* 30 Cal.2d 49 [179 P.2d 804] ; *Gelb* v. *Benjamin,* 78 Cal.App.2d 881 [178 P.2d 476] ; *Vagim* v. *Brown,* 63 Cal.App.2d 504 [146 P.2d 923] ; 12 Cal.Jur.2d p. 508; 17 C.J.S. p. 1226.) Such is the case here. There is nothing on the face of the complaint, nor the contract attached thereto, that discloses any invalidity. The trial court therefore properly required the defendant to assume the burden of proving illegality.

■ We come now to consider defendant's basic contention that the contract is a device for the evasion of the price schedule set by the defendant under the Milk Control Act. The trial court found that the contractual consideration of $1.20 per month per customer "is a fair, just and reasonable compensation for such services." Defendant contends that this finding is not supported by the evidence and that the judgment decreeing the validity of the contract is therefore in error. This contention is predicated on a "cost study" introduced into evidence by plaintiffs, covering the year 1951 and the first five months of 1952, that shows Eaton's direct selling, collecting and advertising costs to be less than 90¢ per month per customer. Defendant takes the position that

the substantial disparity between the contract price of $1.20 and the amount for which Eaton performs the same type of services for his customers who are not Co-op members conclusively demonstrates that the contract constitutes a device for the evasion of the price schedule set by the Director and thus results in a violation of Agricultural Code, section 4361.

Defendant's argument ignores the testimony of plaintiffs' witnesses to the effect that the cost study covers only Eaton's direct collection and solicitation expenses and does not attempt to allocate to those aspects of the business any portion of the general overhead expense. The argument also ignores the following testimony of Eaton: "Let's put it this way: If I paid some responsible, financially able person to guarantee all my accounts and give me one full check at one time— say the 15th of each month, we wouldn't have to bother with collections or anything of that kind. I believe it would be a pretty nice business. Q. You think you'd be tickled to death to do it? A. Yes, I do. Q. Well, in other words, then, you figure, with your paying that $1.20 to the Co-op for each one of your customers which you serve, that you're saving yourself money? A. I think I am. Q. You're making more money on that deal that you would one of your own customers? A. That's right. MR. DONEGAN: And you estimate that your cost per month on the non-Co-op customers, for the cost you didn't incur for the Co-op customers, is at least $1.20 a month? A. Yes, sir." These additional factors justify the court's finding of sufficiency of consideration. Too, in this connection it should be remembered that the burden of establishing the invalidity of the contract rested with defendant.

The finding of adequacy of consideration disposes of defendant's contention, advanced for the first time on appeal, that the contract is violative of the unfair practices provisions of the Milk Control Act. (Agr. Code, § 4280, formerly § 736.3.)

The finding of adequacy of consideration also makes it unnecessary to discuss other arguments of defendant relative to the interpretation of the Milk Control Act and its application to the facts of the instant case. As defendant himself says in his closing brief: "No matter how complicated respondents try to make it, the issue here is simply whether the contract is valid under section 736.13 (4361) of the Agricultural Code. This depends on whether the sum of $1.20 per customer, per month, is a fair, just and reasonable compensation for the services rendered under the contract."

Before leaving this phase of the case it perhaps should be noted that at the trial of the instant action defendant abandoned his affirmative defense that Co-op's distribution of a portion of its profits among its members constitutes an unlawful rebate (Agr. Code, § 4361) to those of its members who are customers of Eaton. Defendant deferred to the decision in *Certified Grocers* v. *State Board of Equalization,* 100 Cal.App.2d 289 [223 P.2d 291]. In that case the court held that the provisions of the Corporations Code which permit cooperative corporations to declare patronage dividends are paramount to the provisions of the Alcoholic Beverage Control Act [Stats. 1935, p. 1123; 2 Deering's Gen. Laws, Act 3796] which prohibits sales of liquor at less than posted prices and secret rebates. In view of these facts no more need be said of this defense.

Defendant offered in evidence a cost study prepared by George O'Neil, an auditor in the Department of Agriculture, that purported to show the selling, collection and advertising costs of Eaton and five other milk distributors in the same marketing area. This study showed Eaton's costs to be 39 cents per month per customer, and those of the other five to range between a low of 35 cents and a high of 51¾ cents. Plaintiffs objected to the admission of the study on the grounds that no proper foundation was laid for its introduction and that it was hearsay. The trial court sustained the objection. Defendant contends the ruling was error, citing subdivision 5 of section 1855 of the Code of Civil Procedure. That section provides: "There can be no evidence of the contents of a writing, other than the writing itself, except in the following cases: . . . 5. When the original consists of numerous accounts or other documents, which cannot be examined in court without great loss of time, and the evidence sought from them is only the general result of the whole."

It should be here observed that the books of the distributors, other than Eaton, from which the figures in the cost study were prepared were not produced in court. Moreover, O'Neil testified on cross-examination that no audit of the books was made, and that he did not know of his own knowledge whether or not the books were correct. ■ Defendant's contention is answered in *People* v. *Doble,* 203 Cal. 510 [265 P. 184], wherein the court said (p. 515): "It is manifestly error to admit in evidence under section 1855, subdivision 5,

of the Code of Civil Procedure, a summary of books where the books themselves are not shown to be admissible in evidence. We, of course, are not intending to hold that the books in each case must be actually received in evidence to warrant the introduction of such summary so long as they are available for use of the opposing party, but their introduction in evidence is the safest rule, and it is not a technical objection to require that a showing be first made that such book entries are entitled to admission if they are actually offered.'' Further it affirmatively appeared from O'Neil's testimony that his cost study did not take into account the time devoted by the milk route drivers in the solicitation and collection of accounts. This was, of course, one of the substantial items of Eaton's expense. Also, it only covered a period of one month.

But assuming the admissibility of O'Neil's figures as they relate to Eaton's operations, yet defendant did not offer these figures independently of those pertaining to the other five distributors. Rather, he offered the study as a whole. ■ Where an offer of evidence includes several different matters, some of which are vulnerable to objection, the entire offer may be rejected. (*Swafford* v. *Board of Education*, 127 Cal. 484 [59 P. 900] ; *Rose* v. *Southern Trust Co.*, 178 Cal. 580 [174 P. 28] ; *Lewis* v. *Western Truck Line*, 44 Cal.App. 2d 455 [112 P.2d 747] ; 24 Cal.Jur. p. 761.)

Defendant complains that the trial court misconceived the theory upon which the case was tried. He refers to comments made by the trial judge from time to time during the course of the trial on the evidence in the case and the applicability of the Milk Control Act thereto. It would unduly protract this opinion to discuss in detail the trial judge's comments and the matters which prompted them. It is enough to say that a reading of the entire record in the case reveals that he had a thorough grasp of the issues involved and of the pertinent evidentiary matters. ■ Moreover, as is noted in *Jones* v. *Tierney-Sinclair*, 71 Cal.App.2d 366, 372 [162 P.2d 669] : ''It has been repeatedly held that although the trial judge may erroneously state his reasons for his conclusions in an opinion, if the evidence supports the findings and the findings support the judgment it will be affirmed on appeal.'' (See also *Northern Cal. Power Co.* v. *Waller*, 174 Cal. 377 [163 P. 214] ; *Foshee* v. *Wolters*, 86 Cal.App.2d 766 [195 P.2d 930] ; *De Cou* v. *Howell*, 190 Cal. 741 [214 P. 444].)

■ Finally, defendant assigns as error the trial court's refusal to permit William J. Hunt, of the State Department of Agriculture, to express his opinion as to the effect the sustaining of the validity of the contract would have on the milk industry at large. The ruling was correct. The only proper subject of inquiry in the case was whether the contract did or did not violate the Milk Control Act.

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.