[Civ. No. 26700. Second Dist., Div. Two. July 8, 1962.]

SANTINO BONACCORSO et al., Plaintiffs and Appellants,
v. MALVERN L. KAPLAN et al., Defendants and
Respondents.

64

Moidel, Moidel, Moidel & Smith. and Leonard Smith for Plaintiffs and Appellants.

Diamond & Tilem and Joseph N. Tilem for Defendants and Respondents.

FOX, P. J.—This action grows out of a real estate transaction. Plaintiff purchasers seek: (1) reformation of a deed of trust they executed covering the entire property and an injunction against a foreclosure sale of one parcel of said property; (2) a declaration that plaintiffs own said parcel free and clear of the lien of defendant sellers' trust deed; (3) damages; and (4) rescission of the entire deal. Plaintiffs have appealed from a judgment denying them any relief and awarding defendants their costs.

Since plaintiffs challenge the sufficiency of the evidence to sustain practically every finding of fact we must

view the record in the light most favorable to the parties who were successful in the trial court. Thus viewed the record reveals the following:

In the late summer of 1958, plaintiff Taranto, who was then working for another builder, asked defendant Ciancio, a licensed real estate broker, to find him a parcel of land suitable for building; that he was thinking of starting to build again. Ciancio, with whom Taranto had been acquainted since 1955, showed the latter five or six parcels; Taranto then asked Ciancio to investigate a 9.3-acre unimproved parcel in West Covina and owned by certain of the defendants.

After noting information on a sign posted on the property, Ciancio contacted defendant Kaplan, one of the owners, to find out more about the property for Taranto. Kaplan advised Ciancio concerning some of the general characteristics of the property; he further stated that price and terms were flexible, and that they depended largely on the financial responsibility of the prospective purchaser.

On approximately October 10, 1958, Kaplan gave Ciancio a two-week written listing. During the term of the listing, Ciancio failed to obtain an offer for the property, but after the two weeks had passed he continued to investigate the property for Taranto.

Taranto and Ciancio made several trips to the West Covina City Hall. There they made examinations of the various requirements of the city, interviewed the city's planning coordinator, looked at various maps and files, and learned that the city would require an off-site improvement bond on the entire parcel of property before any part of it could be developed.

After these investigations, Taranto arranged for a meeting between Ciancio and the other plaintiffs (associates of Taranto) to view the property. This was done, and an authorization was given to Ciancio by plaintiffs to negotiate for the purchase of the property for them. One of the plaintiffs instructed Ciancio to obtain the property for as low a price as he could.

Ciancio thereupon entered into negotiations with defendants to persuade them to reduce their original asking price of $220,000. The price was eventually negotiated down to $179,000, following Ciancio's statement to one of the defendants that defendants' estimate of the costs of off-site improvements was too low and that the price should be reduced to make up the difference. On January 23, 1959, defendant owners signed a letter for Ciancio in which they

agreed to pay Ciancio a commission in the event he sold the property. Upon receipt of this letter, Ciancio prepared a deposit receipt dated February 3, 1959. This receipt was signed by plaintiff Taranto alone and by defendant Kaplan on behalf of the sellers. Upon the execution of the receipt, Taranto gave Ciancio his check for $5,000, and they proceeded to open an escrow at defendant Title Insurance Company.

The deposit receipt consisted of two pages and contained, *inter alia,* certain elections for the buyers respecting the property and provided that "buyer is to assume fully the responsibility for all of the off-site improvements and to put up cash or bond for securing same."

Escrow instructions were prepared and sent to Taranto and to the sellers. Contained in these instructions was this statement: "MY EXECUTION OF SAID NOTE AND DEED OF TRUST IS TO BE DEEMED . . . [MY] FULL APPROVAL OF ALL THE TERMS AND CONDITIONS THEREIN CONTAINED."[1]

Plaintiff Taranto nominated the other plaintiffs as additional buyers, as provided for in the escrow. Defendant sellers' attorney prepared the note and deed of trust which Taranto knew were to be sent to the escrow officer, and which were eventually signed by all of the plaintiffs. Their signatures were acknowledged before a notary public.

As set forth in the deposit receipt, the terms of the sale were: $35,000 cash, through escrow, on a total purchase price of $179,000; sellers were to apply $18,750 of the cash received to obtaining a release from the lien of the first deed of trust, held by one Daniels, on any one of the six parcels contained in the subject property which would be selected by the buyer. Defendants agreed to take back a promissory note secured by a second deed of trust for the balance of the purchase price. Plaintiffs agreed to assume the costs of the off-site improvements and to put up cash or a bond to secure these costs.

After the deposit receipt had been signed (and after the escrow had been opened at the Title Insurance Company and the $5,000 had been deposited with that company), plaintiff Taranto informed Ciancio, the broker, that he was unable to raise sufficient funds for either a bond to cover the off-site improvements or for posting in lieu of a bond. On February 13, 1959, Ciancio, at the request of Taranto, prevailed on

---

[1] The actual statement reads, in part, "my execution of said note and deed of trust is to be deemed by [*sic*] full approval. . . ." Both plaintiffs and defendants in their briefs, however, indicate that the word "by" was intended, and should be read, to be "my."

defendants to modify the condition precedent contained in the deposit receipt and escrow instructions with respect to the requirement of posting an off-site improvement bond. In lieu of posting the bond before close of escrow, defendants agreed to eliminate the release clause from the deed of trust on the parcel to be selected by plaintiffs. By its terms, therefore, the lien of the deed of trust applied to the entire property.

The escrow closed on April 8, 1959, and a grant deed was recorded and delivered to plaintiffs. The promissory note for the balance of the purchase price and the recorded deed of trust signed by plaintiffs were delivered to defendant sellers together with the cash consideration.

Plaintiffs took possession of the property, which they retained for over a year. During that time they paid taxes on the property, had plans drawn for developing the property, caused the City of West Covina to modify the zoning of the property in a minor respect, and negotiated for a listing of the property with Ciancio for resale. They made several attempts to obtain financing to enable them to build 196 ''garden-type'' apartments, but were unsuccessful.

Approximately a year and four months later, on August 12, 1960, plaintiffs engaged counsel to send a ''notice of rescission'' to defendants, asserting mistake and misrepresentation. Prior to sending that notice, one of the plaintiffs had written a letter to defendants in which reference was made to certain financial difficulties and in which an extension of time to make the payment due under the note and deed of trust was requested.

The gravamen of plaintiffs' case is that defendants were guilty of fraud and misrepresentations in this real estate transaction that proximately caused them damage and entitled them to rescind the deal; also, that one parcel (E) was included in the trust deed that was being foreclosed through error and therefore that instrument should be reformed. In order to recover, the burden of proof was of course upon the plaintiffs. But instead of finding for the plaintiffs, the trial court found for defendants on each of these and all other material factual issues. The trial judge was in position to determine the credibility of the witnesses, and as is apparent from the findings and judgment, chose to place credence in the defendants' testimony and in the evidence produced by them, and to draw the reasonable

inferences therefrom favorable to defendants' position. ■ In such circumstances, " " " ' [i]t is not the province of a reviewing court to present . . . a detailed argument on the sufficiency of the evidence to support the judgment where it appears that the question is one purely of determining which side shall be believed. ■ The trial court having determined this with the witnesses before it, the controversy is settled.' " ' " (*Hayden* v. *Hatch*, 134 Cal.App.2d 765, 768 [286 P.2d 541]; *Gillespie* v. *Gillespie*, 121 Cal.App.2d 95, 97 [262 P.2d 607]; *DeFreitas* v. *DeFreitas*, 133 Cal.App.2d 769, 772 [285 P.2d 111].)

Plaintiffs, in a vain effort to fortify their case and hold defendant sellers responsible for asserted misrepresentations on the part of Ciancio, the broker, make the unmeritorious contention that Ciancio acted "as a matter of law, at all times, as the agent of [defendant sellers] from the moment he began discussing with Taranto . . . the property in question"; and that the court erred in not so finding. ■ The correct principle is stated in *Cisco* v. *Van Lew*, 60 Cal.App. 2d 575 [141 P.2d 433], at p. 585: "Whether an agent may act as such for both parties seems to depend upon the circumstances of each case. ■ The general rule is that an agent may represent both parties to a contract with their full knowledge and consent . . ." ■ Here both sides were fully aware of and understood the broker's activities and position in this deal. The trial court's finding on this issue that "Ciancio acted, at different times during the course of the negotiations, as the authorized agent for plaintiffs and defendant sellers in connection with the purchase and sale of the subject property" is in complete harmony with the evidence. ■ "The fact that a broker's commission is paid by one party does not necessarily make him the exclusive agent of that party." (*Wright* v. *Lowe*, 140 Cal.App.2d 891, 897 [296 P.2d 34].) In *Sands* v. *Eagle Oil & Refining Co.*, 83 Cal.App.2d 312 [188 P.2d 782], the court noted (p. 318): "The fact that Tarman [the broker] was required to look to the lessors for compensation does not militate against his being the agent of respondent [the lessee]."

Plaintiffs also seek to fix liability on defendant sellers for the asserted false statement attributed to the escrow officer, Loomis, that the deed of trust which they executed and which included the controversial parcel E, was the same as the escrow instructions. But Loomis was no more the agent of defend-

ants than he was of the plaintiffs—for he was the agent of both groups. "It is well settled that an escrow agent is the agent of both parties to such a transaction. [Citation.] And further that the knowledge possessed by such agent is to be imputed to each of the parties to the escrow. [Citations.]" (*Ryder* v. *Young,* 9 Cal.App.2d 545, 553 [50 P.2d 495].)

 Plaintiffs seem to argue that this transaction is invalid because the antecedent documents did not fully meet the requirements of the statute of frauds. This argument completely overlooks the purpose of the statute and its application to executory contracts. Here the deal has been executed by the transfer of title and the documents of security. The law has long been established that the statute of frauds has no application to an executed agreement. (*Bates* v. *Babcock,* 95 Cal. 479 [30 P. 605, 29 Am.St.Rep. 133, 16 L.R.A. 745]; *James* v. *Hall,* 88 Cal.App. 528 [264 P. 516]; *Kreling* v. *Walsh,* 77 Cal.App.2d 821 [176 P.2d 965].)

 Plaintiffs assign as error the court's denial of their motion "to amend the Complaint so as to re-open the case and also to conform to proof." They do not, however, furnish us with any explanation of what is involved or any argument at all in support of their position. We may therefore assume that plaintiffs have abandoned this assignment. (*People* v. *Scott,* 24 Cal.2d 774, 783 [151 P.2d 517]; *Remainders, Inc.* v. *Bartlett,* 215 Cal.App.2d 295, 297 (fn. 2) [30 Cal.Rptr. 191].)

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.