[Civ. No. 21526. First Dist., Div. Two. April 17, 1964.]

VERNE ARNESON, Plaintiff and Respondent, v. MARVIN WEBSTER, Defendant and Appellant.

Timothy W. O'Brien and James F. Kemp for Defendant and Appellant.

Hugh L. Preston for Plaintiff and Respondent.

SHOEMAKER, P. J.—Plaintiff Verne Arneson, a licensed real estate broker, brought this action to recover a real estate commission in the amount of $7,500 from defendant Marvin Webster.

The complaint alleged a written agreement by defendant to

pay plaintiff the commission on the sale of a motel to Albert Hines; that plaintiff had fully performed under the agreement but had not been paid. Defendant answered, admitting that he had entered into the agreement with Hines, but denying any obligation to pay plaintiff a commission in any amount.

The evidence developed that in June or July 1961, plaintiff employed Kenneth Peterson as a real estate salesman. At the time of his employment, Peterson was new to the real estate business and had just obtained his salesman's license following a two-month real estate course. Pursuant to the terms of his employment, Peterson was authorized to sign real estate contracts on plaintiff's behalf and was entitled to receive 50 per cent of the commission on any property sold by him.

In August, Peterson learned that the defendant's motel was for sale. He called on defendant's manager and inquired about the property. Shortly thereafter, defendant came to plaintiff's office, saw Peterson, and discussed the selling of the motel for $110,000 in cash, or $125,000 in trade or paper, net to him, and that Peterson could keep as a commission any excess. According to Peterson, he informed the defendant that he worked on a 6 per cent basis, as he had been taught in school, but that he would be willing to work on the property and present any offer he might obtain to the defendant. When the defendant indicated that he was willing to have him list the property for sale, Peterson produced a notebook in which the defendant wrote the words "$110,000 cash, $125,000 trade or paper" (it will be noted that these are round figures, and not "net"), and signed his name and address.

Peterson then submitted the property to Hines. Hines was unwilling to make a definite offer, but was interested in the property. At the time he was liquidating his grocery business. He discussed with Peterson the possibility of applying a portion of the stock toward the purchase price. When Peterson told him that he thought such an arrangement could be worked out, Hines agreed to meet with defendant. Peterson then called defendant and informed him that he thought he had a buyer. The only testimony pertaining to the details of this conversaton was that of the defendant, who stated that Peterson had informed him that he thought he had found a party who would be willing to purchase the motel for $125,000. When the defendant asked Peterson how he intended to obtain his commission, Peterson stated that the buyer was going to give him a truckload of groceries.

On the evening of August 25, 1961, Peterson, Hines and the defendant met at plaintiff's realty office. After certain preliminary negotiations between the defendant and Hines, the basic terms of the purchase and sale were agreed upon. Peterson then began filling in a printed deposit receipt agreement. His first attempt to complete the form was unsuccessful in that he applied $2,000 worth of groceries toward the purchase price. Hines instead asked for a $2,000 increase on defendant's second deed of trust and defendant agreed. Peterson then drew up the final agreement, which provided that the defendant was to receive the home property of Hines at a value of $18,000 in trade, and a second deed of trust on the motel in the sum of $21,000. The total purchase price was $125,000 (including assumption of the first deed of trust of $86,000).

After Peterson had filled out the deposit receipt agreement in four duplicate copies, he handed these copies, which were joined together at the top with carbons between, to defendant and Hines. At this time, the blank providing for the amount of the commission due the real estate broker had not been filled in. After defendant and Hines had signed the agreement, they handed it back to Peterson, who tore the four copies apart, retained the original and one copy for himself, and passed the other two copies to the defendant and Hines. After examining his copy, Hines pointed out to Peterson that he had neglected to include a provision to the effect that the agreement was to be performed within 30 days. Peterson then added the 30-day provision to each. He then handed back to the defendant and Hines their copies. The meeting terminated without any discussion of a 6 per cent commission being due on the sale.

Peterson testified that on separating, defendant instructed him to try and increase the loan on the house he had taken in trade "so you can get your commission." Hines confirmed that he had heard defendant say at this time that Peterson should attempt to increase the loan, but that he had no recollection of anything being said about any commission. The defendant denied that any such discussion had taken place on the evening of August 25, and stated that he had asked Peterson to increase this loan some two or three weeks later in connection with a sale of the property which he had taken in trade on the motel transaction. Peterson admitted that he had in fact handled such a sale for the defendant approximately a month after the completion of the motel transaction,

He stated that at that time he had left the plaintiff's employ and was working for one Jack McCoey. This second sale resulted in a commission of approximately $2,000.

On the day following the execution of the deposit receipt agreement between the defendant and Hines, Peterson took the original copy of the agreement to the title company to place it in escrow. While reading the agreement over, he discovered that it did not provide that Hines was to assume the existing first deed of trust on the motel. Peterson added a provision to that effect.

He then attempted to increase the loan on the property which the defendant had taken in trade, but was unable to do so. He informed defendant that the loan could not be increased until the property was occupied, and from the conversation had at that time he got the impression that defendant did not intend to pay him a commission and considered the motel sale a "net deal" pursuant to which he had obtained a net price of $125,000 by trade or paper. Peterson never requested that defendant pay him a 6 per cent commission.

All four copies of the deposit receipt agreement were introduced into evidence at the trial. The original and the copy retained by Peterson both had the figure "6" written in the space provided for the insertion of a number designating the per cent to be paid as the broker's commission. On the copies given to Hines and defendant, this blank was not filled in. When Peterson was questioned regarding this alteration of the documents in his possession, he evinced considerable uncertainty as to the time and circumstances. He conceded that the "6" was not in the agreement when it was signed by the defendant and Hines, and that he actually did not know when it had been added. He stated that he might have added it on the evening of August 25 or on the following day, but admitted that he was not positive that the "6" was in his handwriting and that it could have been written by someone else. Both defendant and Hines testified unequivocally that the "6" was not in the agreement when it was signed by them, and that they had never authorized Peterson to add the "6" on any subsequent occasion. The defendant further testified that he had told Peterson that he wanted a stated net price for the property and that he had at no time agreed to pay Peterson 6 per cent or any other specified percentage of the purchase price. He admitted, however, that he had had considerable experience with real estate, that he was familiar

with the form of deposit receipt used by Peterson, that during the deal he recognized Peterson's lack of experience in real estate matters, and that in prior transactions of this nature he had crossed out the blank providing for a broker's commission if he had intended to pay none.

Peterson admitted that the defendant had never expressly authorized him to add the "6," but stated that on his first meeting with the defendant and during all subsequent conversations, "every time he [the defendant] would bring up the net deal I would bring up the 6% ... whenever he brought it up, why, talked net, why, I would say, 'Well, I have to work on 6%.' And he didn't turn down anything I would bring to him. It was accepted."

Upon this evidence, the trial judge submitted the case to the jury under instructions that the plaintiff was entitled to judgment only if the numeral "6" was in the agreement when it was signed by the defendant or was inserted afterwards with the express or implied authority of the defendant.

Verdict and judgment were for the plaintiff in the amount of $7,500. The defendant appeals therefrom.

Appellant's first contention is that the evidence was insufficient as a matter of law to support the verdict. He asserts, more specifically, that there was no evidentiary support for a finding either that the "6" was in the agreement when he signed it or that it was subsequently added with his authorization.

A review of the evidence above summarized reveals that appellant, Peterson, and Hines, all testified that the "6" was not in the agreement when it was signed. Moreover, an examination of the four copies of the agreement leaves no doubt that the "6" must, of necessity, have been added after it was signed. Under such circumstances, it follows that the judgment for respondent may be upheld only if there was evidence in support of a finding that the addition of the "6" was expressly or impliedly authorized by appellant.

Two California statutes appear pertinent in this connection:

(1) Civil Code, section 1700, provides that "The intentional destruction, cancellation or material alteration of a written contract, by a party entitled to any benefit under it, or with his consent, extinguishes all the executory obligations of the contract in his favor, against parties who do not consent to the act."

(2) Code of Civil Procedure, section 1982, states that "The

party producing a writing as genuine which has been altered, or appears to have been altered, after its execution, in a part material to the question in dispute, must account for the appearance or alteration. He may show that the alteration was made by another, without his concurrence, or was made with the consent of the parties affected by it, or otherwise properly or innocently made, or that the alteration did not change the meaning or language of the instrument. If he do that, he may give the writing in evidence, but not otherwise.''

In the instant case, the evidence established that the original copy of the deposit receipt agreement was altered after it had been signed by appellant and Hines.[1] Upon such a showing, the burden of accounting for the alteration was cast upon respondent, who had produced the document and relied upon it as genuine. It has been stated that proof that an alteration in the terms of an instrument was authorized by the party affected by it must be clear and convincing in order that such party may be bound thereby. (*Dozier* v. *National Borax Co.* (1917) 35 Cal.App. 612, 618 [170 P. 638].) However, the requirement of ''clear and convincing'' evidence is primarily for the trial court, whose determination cannot be attacked on appeal if there is substantial evidence to support the judgment. (*Beeler* v. *American Trust Co.* (1944) 24 Cal.2d 1, 7 [147 P.2d 583]; *Fahrney* v. *Wilson* (1960) 180 Cal.App.2d 694, 697 [4 Cal.Rptr. 670].)

The evidence most favorable to respondent reveals that Peterson repeatedly told appellant that he was willing to work only on a 6 per cent basis; that appellant, knowing Peterson's position, listed the property with Peterson ''$110,-000 cash, $125,000 trade or paper'' without any reference to the same being net figures; that when Peterson did in fact find a buyer, appellant met with him and Peterson and allowed the latter to draw up a deposit receipt agreement; that appellant then signed this agreement, which was on a form with which he was familiar, and did not, as he had in the past, cross out the blank providing for a broker's commission; that appellant was aware of Peterson's lack of experience in the real estate business, whereas he had a rather extensive background in dealing with real estate; that appellant, that same evening, instructed Peterson to try and increase the loan on

---

[1]In *King* v. *Tarabino* (1921) 53 Cal.App. 157 [199 P. 890], the word ''execution,'' as used in section 1982, was held not to include delivery and to be synonymous with signing only.

the property he had taken in trade so that Peterson could get his commission. We cannot hold that such evidence is insufficient as a matter of law to support the finding of the jury that appellant impliedly authorized Mr. Peterson to write in the ''6.'' Further, it has been stated that as a general rule, one who signs an instrument containing blanks must intend it to be filled in by the person to whom it is delivered. (*Thomas* v. *Fursman* (1918) 39 Cal.App. 278, 280 [178 P. 870].) In the present case, the prior dealings and past experience of the parties render this presumption particularly applicable.

 Appellant next contends that respondent's counsel was guilty of prejudicial misconduct by reason of having asked appellant certain questions allegedly designed to show the jury that he was a man of wealth and that he had acquired title to the motel by foreclosing a second deed of trust. This contention is without merit. An examination of the record reveals that the trial court sustained all of appellant's objections to this testimony, and instructed the jury to disregard it. Under such circumstances, the error was rendered harmless. (*Elliott* v. *Federated F. & V. Growers, Inc.* (1930) 108 Cal.App. 412, 418 [291 P. 681].) In any event, the testimony complained of was not prejudicial in nature and would appear to have been elicited for the purpose of demonstrating that appellant had had considerable experience with real estate transactions.

 Appellant's final contention is that the judgment for respondent was barred by the statute of frauds and by the Real Estate Law (Bus. & Prof. Code, §§ 10000 et seq.) Appellant failed to raise either defense in the trial court and hence cannot urge them here. (*Algeri* v. *Tonini* (1958) 159 Cal.App.2d 828, 832 [324 P.2d 724]; *Dunn* v. *Dunn* (1960) 180 Cal.App.2d 839, 842 [4 Cal.Rptr. 748].)

Judgment affirmed.

Agee, J., and Taylor, J., concurred.

A petition for a rehearing was denied May 15, 1964.