[Civ. No. 24599. First Dist., Div. One. July 18, 1969.]

DOUGLAS J. FELLOM et al., Plaintiffs and Respondents, v. ARTHUR E. ADAMS, Defendant and Appellant.

856

Burd, Hunt & Quantz, Quantz & Tanner and Charles J. Quantz for Defendant and Appellant.

George DeLew for Plaintiffs and Respondents.

SIMS, J.—The defendant Adams has appealed from a judgment which awarded the plaintiffs principal, accrued interest and attorney's fees in an action on a promissory note. He contends, for the first time on appeal, that since the record reveals that the consideration for the note was. services rendered in a real estate transaction the plaintiffs cannot recover because of a failure to allege and prove that they were duly licensed as a salesman and broker, respectively. (See Bus. & Prof. Code, § 10136.) He further asserts that there was

a lack of consideration for the note because it was given for an obligation unenforceable under the statute of frauds (see Civ. Code, § 1624, subd. 5) ; that no personal judgment should have been entered because plaintiffs failed to exhaust the security allegedly given for the note (see Code Civ. Proc., § 726 prior to its amendment, effective January 1, 1965, by Stats. 1963, ch. 819, § 26, pp. 2007-2009, and § 52, p. 2015) ; and that the findings are deficient and are unsupported by the evidence.

It is concluded for the reasons set forth below that defendant's attack on the judgment is not tenable, and that the judgment must be affirmed.

*Findings and Evidence*

The issues originally formulated by the allegations of the plaintiffs' complaint and the general denials in the defendant's answer were the execution and delivery of the note, the question of whether the security referred to in the note[1] had become valueless, and whether plaintiffs were entitled to attorney fees. Nonpayment of the note was admitted.

At the pretrial conference the issues were expanded to permit the defendant to show lack of consideration and failure of consideration as affirmative defenses. His answer was amended accordingly. The issue of whether there was in fact a chattel mortgage securing the note was added. Subsequently, the plaintiffs were permitted to file a second cause of action for declaratory relief to determine if the note was in fact secured, and, if so, for foreclosure of the security.

---

[1]The note reads:

"Straight Note

$16,750.00 San Francisco, California December 18, 1962

ON MARCH 31, 1963 ............... after date, for value received, I, ARTHUR E. ADAMS, a married man promise to pay to Douglas J. Fellom, a single man, an undivided ½ interest, LOIS D. HARPER, a married woman, an undivided ½ interest, or order, at 5032 Geary Boulevard, San Francisco 18 the sum of SIXTEEN THOUSAND SEVEN HUNDRED FIFTY AND NO/100ths DOLLARS, with interest from DATE until paid, at the rate of Six per cent per annum, payable upon maturity.

"Should default be made in payment of interest when due the whole sum of principal and interest shall become immediately due at the option of the holder of this note. Principal and interest payable in lawful money of the United States. If action be instituted on this note I promise to pay such sum as the Court may fix as attorney's fees. *This note is secured by building contracts nine fourplexes in Los Gatos, California actual value $37,000.00.*

/s/ Arthur E. Adams.'' (Italics added.)

The court found that the defendant made, executed and delivered the note to plaintiffs on the date it bears for value received, that it was unpaid, and that the principal sum, together with accrued interest and attorney's fees, was owing from defendant to plaintiffs. The court also found that the allegation and denials contained in defendant's answer and the amendment thereto were false. It made the following specific findings:

"II That it is true that the promissory note set forth in paragraph I of plaintiffs' complaint was executed and delivered by defendant in payment of his indebtedness to plaintiffs on a transaction that had already been consummated; that said promissory note is supported by good, fair and adequate consideration and that such consideration has not failed.

"III That it is true that the promissory note set forth in paragraph I of plaintiffs' complaint constitutes the only agreement or instrument delivered to plaintiffs by defendant to evidence the obligation therein referred to, or by way of security.

"IV That it is not true that the said promissory note set forth in paragraph I of plaintiffs' complaint was secured by a mortgage on real or personal property.

"V That it is true that the building contents [sic] referred to in the promissory note set forth in paragraph I of plaintiffs' complaint had become valueless without any act on the part of the plaintiffs, or either of them, at the time this action was commenced."

These findings are sustained by the evidence. At the trial it was stipulated that the defendant executed the note. He acknowledged that nothing had ever been paid on or credited against the note. Plaintiff Fellom and the office bookkeeper testified that the note was prepared by the bookkeeper at Fellom's direction and that the defendant dictated the reference to the security, that the note was given to defendant, and that he signed it and handed it to Fellom.

Fellom testified that at the time he received the note his relationship with the defendant was that of agent and client, that plaintiff Harper's real estate office sold a parcel of property in San Jose owned by defendant; that the defendant first agreed to exchange this property for other property but the exchange was never effected; that plaintiffs found a buyer ready, willing and able to buy the property; that defendant signed an agreement—a deposit receipt—for the sale of the property, which had a value of over $700,000, and agreed to

pay plaintiff Harper a commission for the sale; that there was insufficient cash in the transaction to pay the full amount of the commission; that $4,500 was paid through escrow and that the $16,750 note represented the balance. Defendant's legal objections to the admission and effect of this testimony are discussed below. Defendant, through cross-examination of Fellom and by his own testimony, attempted to show that the note was given for future services in connection with sales, which did not materialize, of other properties. Fellom unequivocably denied that such was the case. Defendant's testimony lacked conviction on that point and at best established that the principal transaction which was to have been effected within five days only closed three or four weeks later.

Defendant's testimony revealed that the language "building contracts nine fourplexes in Los Gatos, California," which he had dictated, referred to contracts between Investright, Incorporated, as owner, and Meadowview Homes as builder. Defendant claimed that he owned and financed Meadowview Homes. He acknowledged that one Couch, a licensed general contractor, worked for him and did contracting under the name of Meadowview Homes. Evidence was introduced to show that on the owner's alleged default, Couch, doing business under that name, sued Investright, Inc. without any mention of defendant as a party interested in the contract for the fourplexes. Defendant testified that he was going to get "a percentage"—"a commission"—"the bulk of the profit"—from Couch on the construction contracts, and acknowledged that he had previously testified "50 per cent of whatever profit we made" in the action brought by Couch against the owner. He admitted that he did not have a contractor's license when the contracts were made and did not acquire one until June 1965.

The parties agreed that, aside from the recital in the note itself, there was no other document which attempted to secure the note, and Fellom so testified.

The defendant testified that the job on the fourplexes did not go ahead and that they were never constructed by Couch and himself. The outcome of the action brought by Couch for damages against the owner is not revealed. Couch's complaint reflects prospective profits of $36,900, admits that $800 was received under the contract, and seeks the difference as damages.

On this evidence the court could properly find that there was consideration for the note, that there was no mortgage

security, and that any security contemplated had become valueless.

Defendant not only objected to the findings in the lower court, but also requested special findings on the issues of whether the services rendered to defendant were performed pursuant to an agreement in writing, and if so, the terms of that agreement, and whether the plaintiffs complied with those terms.

At the time of the trial and the appeal, section 634 of the Code of Civil Procedure (Stats. 1963, ch. 378, § 1, p. 1167; cf. Stats. 1968, ch. 716, § 2, p. 1418, operative January 1, 1969) provided in part: ". . . If upon appeal or upon a motion under Section 657 or 663 of this code it appears that the court has not made findings as to all facts necessary to support the judgment, or that the findings are ambiguous or conflicting upon a material issue of fact, the court before which such appeal or motion is pending shall not infer that the trial court found in favor of the prevailing party on such issue if it appears that the party attacking the judgment made a written request for a specific findings on such issue either prior to the entry of judgment or in conjunction with a motion under Section 663 of this code." It may be assumed that the foregoing mandate precludes a finding by implication adverse to the defendant on any issue on which he requested a finding, if it is not expressly controlled by the findings that actually were made. (See *Kerr Land & Timber Co.* v. *Emmerson* (1965) 233 Cal.App.2d 200, 222 [43 Cal.Rptr. 333]; and *Garber* v. *City of Los Angeles* (1964) 226 Cal.App.2d 349, 354-356 [38 Cal.Rptr. 157].)

The relevancy and materiality of any prior written agreement depends upon the legal question of whether performance of an agreement, otherwise unenforceable under the Statute of Frauds, will furnish consideration for a subsequent agreement or note. Since this question, as discussed below, is determined adversely to defendant, the question of the existence or non-existence of a prior written agreement is irrelevant. If there were such an agreement, and the plaintiffs failed to perform in accordance with its terms, it lay within the power of the defendant to produce proof of those facts. As the record stands, Fellom's testimony concerning the consideration furnished defendant is uncontradicted and unimpeached.

No error is found in the rulings on the findings, nor is there a lack of sufficient evidence to sustain them.

*Licensing*

■ Section 10136 of the Business and Professions Code provided, and provides, as follows: "No person engaged in the business or acting in the capacity of a real estate broker or a real estate salesman within this State shall bring or maintain any action in the courts of this State for the collection of compensation for the performance of any of the acts mentioned in this article without alleging and proving that he was a duly licensed real estate broker or real estate salesman at the time the alleged cause of action arose."

■ "An agreement employing a person to act as a real estate broker who is not licensed as such is illegal, void and unenforceable. [Citations.]" (*Estate of Prieto* (1966) 243 Cal.App.2d 79, 85 [52 Cal.Rptr. 80]; and see *Abrams* v. *Guston* (1952) 110 Cal.App.2d 556, 557 [243 P.2d 109].)

"The purpose of the law is to prevent recovery of a real estate commission by a person not licensed as a real estate broker or salesman. It is for this reason the law not only requires the person seeking recovery of a real estate commission to plead and prove he is a licensed real estate broker, but also provides that any person acting as a real estate broker without a license is guilty of a criminal offense (Bus. & Prof. Code, § 10139), and further provides that any person who pays a real estate commission to a person not licensed as a real estate broker is guilty of a criminal offense. (Bus. & Prof. Code, § 10138.)" (*Estate of Prieto, supra,* at p. 85; and see *Christman* v. *Guaranty Mort. Co.* (1930) 103 Cal.App. 347, 348-349 [284 P. 517]; and *Beebe* v. *Kistler* (1921) 52 Cal. App. 494, 495 [199 P. 537].)

■ The foregoing principles govern an action brought directly for the purpose of recovering compensation. In an action on a promissory note the maker may show, as against other than a holder in due course, that the consideration for the note was illegal because the services for which the note was given were rendered by an unlicensed person. (*Benson* v. *Andrews* (1958) 166 Cal.App.2d 44, 53-54 [332 P.2d 698]; *Pace* v. *Hanson* (1967) 6 Ariz.App. 88, 92 [430 P.2d 434, 437] [Rev. denied October 24, 1967]; *Douthart* v. *Congdon* (1902) 197 Ill. 349, 353-356 [64 N.E. 348, 350, 90 Am.St.Rep. 167]; *Rash* v. *Farley* (1891) 91 Ky. 344, 346 [15 S.W. 862, 863, 12 Ky.L.R. 913, 34 Am.St.Rep. 233] [affd. (1895) 159 U.S. 263 [40 L.Ed. 146, 15 S.Ct. 1042]]. See 11 Am.Jur.2d, Bills and Notes, § 220, p. 248, and § 267, pp. 294-295; and cf. *Christman* v. *Guaranty Mort. Co., supra,* 103 Cal.App. 347, 349.)

■ Generally, however, a person suing on a promissory note is not required to plead or prove the contractual relationship giving rise to the execution and delivery of the note. (*Antioch College* v. *Barnhart* (1942) 49 Cal.App.2d 171, 173 [121 P.2d 521]; *Elmore* v. *Tingley* (1926) 78 Cal.App. 460, 465-466 [248 P. 706].) ■ "Where the illegality of a contract does not appear from the face of the complaint it becomes a matter of affirmative defense that must be specially pleaded. And in such case the burden of proof is on the defendant. [Citations.]" (*Eaton* v. *Brock* (1954) 124 Cal. App.2d 10, 13 [268 P.2d 58].)

In *Estate of Prieto, supra,* the court quoted with approval from *Lewis & Queen* v. *N. M. Ball Sons* (1957) 48 Cal.2d 141, 147 [308 P.2d 713], as follows: "Whatever the state of the pleadings, when the evidence shows that the plaintiff in substance seeks to enforce an illegal contract or recover compensation for an illegal act, the court has both the power and duty to ascertain the true facts in order that it may not unwittingly lend its assistance to the consummation or encouragement of what public policy forbids. [Citations.] It is immaterial that the parties, whether by inadvertence or consent, even at the trial do not raise the issue. The court may do so of its own motion when the testimony produces evidence of illegality. [Citation.] It is not too late to raise the issue . . . even on appeal." (243 Cal.App.2d at pp. 85-86.) In each of the foregoing cases the proceedings involved a direct attempt to secure compensation, and not an action on a promissory note, and the case relied on in *Lewis & Queen* was a suit on a contract found to be illegal when the objection was first raised on appeal. (See *Morey* v. *Paladini* (1922) 187 Cal. 727, 733-734 [203 P. 760].) The record does not disclose in *Estate of Prieto* whether the question of illegality was raised in the trial court. In *Lewis & Queen,* however, the opinion recites, "In the present case the issue was in fact raised during the trial." (48 Cal.2d at p. 148.)

■ In this case there are several considerations which preclude the defendant from successfully asserting illegality at this stage of the proceedings. The only references to licensing at the trial arose in connection with the direct examination of plaintiff Fellom, as follows: "Q. And do you recall where this note was prepared? A. Yes, in the office of Lois Harper, Realty. . . . Q. Where is Mrs. Harper located? A. At that time it was at 5032 Geary. . . . Q. And is she a broker? A. Yes. [Defendant's Attorney]: I'll object, your Honor.

THE COURT: Well, I will take judicial notice that she is a broker.[2] Q. Is she also one of the payee names in Plaintiffs' No. 1 in evidence? A. Yes. Q. Were you working for her at that time? A. I was a licensed salesman. Q. In her office? A. Yes."

█ The status of a person as a licensed broker or salesman is a matter of public record of which the court can take judicial notice. (See, Bus. & Prof. Code, § 10082, former § 10060 superseded by Gov. Code, §§ 6252, 6253 [Stats. 1968, ch. 1473, § 20, p. 2945, and § 39, p. 2945].) It is unnecessary in this case, however, to determine in what manner the power to take judicial notice should be exercised. (Cf. Witkin, Cal. Evidence (2d ed. 1966) § 151, p. 146, with § 186, p. 169; and see *McPheeters* v. *Board of Medical Examiners* (1946) 74 Cal. App.2d 46, 47 [168 P.2d 65].) █ The court's observation in any event clearly advised the defendant that this objection was being disregarded and that the court was accepting the facts as testified to by the witness.

The objection itself was inadequate because it failed to state the ground upon which it was made. (*Bundy* v. *Sierra Lbr. Co.* (1906) 149 Cal. 772, 775-776 [87 P. 622]; *Estate of Wahlefeld* (1930) 105 Cal.App. 770, 772-773 [288 P. 870]; and see Witkin, *op.cit.,* § 1228, pp. 1191-1192.) If defendant was seriously contending that plaintiff Harper was not licensed as a broker, he could have asserted the best evidence rule or otherwise made his views known in connection with his objection. In such event the plaintiff could have proceeded to produce other evidence. On the record the unstricken testimony of the salesman concerning his employer's status is sufficient to sustain the finding, implicit in the express findings and the judgment, that the broker was licensed. (See, *Page* v. *Principe* (1963) 220 Cal.App.2d 151, 154 [33 Cal.Rptr. 836].) Defendant requested no finding on this issue. (Cf. discussion above.)

Furthermore, even if the witness' answer and the judge's comment be disregarded, the record reveals that the salesman testified without objection that he was licensed and was employed by his coplaintiff. By definition a real estate salesman must be employed by "a licensed real estate broker." (Bus. & Prof. Code, § 10132; and see §§ 10137, 10138, 10139,

---

[2]That the court's remark was not facetious or without foundation is apparent from the fact that at the outset of the case he offered to disqualify himself because he was acquainted with Mrs. Harper. The defendant declined the offer.

former § 10151 [Stats. 1947, ch. 496, § 3; p. 1477, and as amended, operative January 2, 1966, Stats. 1965, ch. 1489, § 3, p. 3471; recast Stats. 1968, ch. 397, § 3, p. 831, former § 10161 [repealed Stats. 1968, ch. 397, § 5, p. 832], and § 10161.8 [added by Stats. 1968, ch. 397, § 7, p. 832].) His testimony that he was a licensed salesman in Mrs. Harper's office thereby permits the inference that she was a duly licensed real estate broker.[3]

Finally, it should be noted that under the circumstances of this case the defendant should not be permitted to raise the question of illegality at this stage of the proceedings. His only objection at the trial is reviewed above. Despite the fact that he requested detailed findings on the issue of the statute of frauds (see *infra*), he made no request for any finding on the licensed status of the broker or the salesman. In *Arneson* v. *Webster* (1964) 226 Cal.App.2d 370 [38 Cal.Rptr. 88], the court stated: "Appellant's final contention is that the judgment for respondent was barred by the statute of frauds and by the Real Estate Law (Bus. & Prof. Code, §§ 10000 et seq.) Appellant failed to raise either defense in the trial court and hence cannot urge them here. (*Algeri* v. *Tonini* (1958) 159 Cal.App.2d 828, 832 . . . ; *Dunn* v. *Dunn* (1960) 180 Cal. App.2d 839, 842 . . . )" (226 Cal.App.2d at p. 377.) In *Algeri* v. *Tonini* (1958) 159 Cal.App.2d 828 [324 P.2d 724], the court pointed out: "If the issue had been presented in the trial court the plaintiff could have offered evidence on it, and the trial court could have made a finding on whether the deed of trust was or was not a purchase money deed of trust." (159 Cal.App.2d at p. 832.) Similar principles have been applied in licensing cases and they are governing here. (See *Munson* v. *Kirby* (1930) 105 Cal.App. 213, 215 [287 P. 133]; and *Christman* v. *Guaranty Mortg. Co., supra,* 103 Cal.App. 347, 349.)

---

[3]The question of the propriety of making the note payable jointly to the broker and the salesman in the light of the provisions of sections 10137 and 10138 of the Business and Professions Code has not been raised in these proceedings and is not considered. These sections, respectively, provide in part, "No real estate salesman shall be employed by or accept compensation from any person other than the broker under whom he is at the time licensed" (§ 10137), and "It is a misdemeanor . . . for any person . . . to pay or deliver to anyone a compensation for performing any of the acts within the scope of this chapter, who is not known to be or who does not present evidence to such payor that he is a regularly licensed real estate broker at the time such compensation is earned." (§ 10138.) (See *D'Orazi* v. *Bank of Canton* (1967) 254 Cal.App.2d 901, 903-904 [62 Cal.Rptr. 704]; and cf. *Campbell* v. *Romfh Bros., Inc.* (Fla. App. 1961) 132 So.2d 466, 468-469.)

No cognizable defect is found with respect to the plaintiffs' capacity to sue and recover on the promissory note.

*Statute of Frauds*

■ At the time of the transactions at issue in this case, section 1624 of the Civil Code provided in pertinent part as follows: ''The following contracts are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent: . . . 5. An agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or a commission; . . .'' (See also, former Code Civ. Proc., § 1973 [repealed effective January 1, 1967, Stats. 1965, ch. 299, § 113, p. 1363]. Amendments to § 1624 by Stats. 1963, ch. 814, § 1, p. 1843, and Stats. 1967, ch. 52, § 1, p. 953, which amplify the language of subdivision 5, do not affect the principles applicable to this case.)

Defendant's attempts to establish by the cross-examination of plaintiff Fellom whether or not there was a prior written agreement for the services of plaintiffs were frustrated by objections from plaintiffs which were sustained by the court. When, on the court's inquiry, the witness testified to the circumstances giving rise to the execution and delivery of the note, the defendant objected to the oral testimony and moved to have the testimony stricken. This motion was denied.

In response to the court's interrogation, Fellom did testify as follows: ''THE COURT: Did Mr. Adams sign and agree to pay Lois Harper a commission for the sale of the property? THE WITNESS: He did. . . . THE COURT: Well, what did he sign and agree to pay? THE WITNESS: He signed the note for the balance which did not come from escrow, $4500 came from escrow and— THE COURT: That isn't what I asked you. The agreement of sale of Mr. Adams' property was ratified by him and he agreed to pay a commission, did he? THE WITNESS: Yes.'' Nevertheless, Fellom's testimony taken as a whole leaves it questionable whether there was any instrument in writing, other than the escrow instructions and the note, which established the employment of plaintiffs and embodied the terms upon which those services were to be rendered. Defendant's attempts to secure findings on this issue have been recounted above.

The escrow instructions if subscribed by the defendant would sustain the payment of such funds as were disbursed through the escrow regardless of whether there was a prior written

agreement. (See *Beazell* v. *Schrader* (1963) 59 Cal.2d 577, 580 [30 Cal.Rptr. 534, 381 P.2d 390].) However, neither escrow instructions which failed to mention the balance of the commission, nor a bare promissory note would furnish sufficient memorandum to satisfy the statute of frauds. (*Beazell* v. *Schrader, supra,* 59 Cal.2d 577, 581-582; *Franklin* v. *Hansen* (1963) 59 Cal.2d 570, 574-577 [30 Cal.Rptr. 530, 381 P.2d 386]; and see 2 Corbin, Contracts (1950) § 508, pp. 733-734.)

Defendant has failed to consider that the promissory note is itself a written agreement, and that the moral obligation to perform an agreement, otherwise unenforceable because of the statute of frauds, will furnish sufficient consideration for the note. In *Carrington* v. *Smithers* (1915) 26 Cal.App. 460 [147 P. 225], the court adopted as the law of this state the following rule from *Muir* v. *Kane* (1909) 55 Wash. 131, 135-136 [104 P. 153, 19 Ann.Cas. 1180, 26 L.R.A. N.S. 519]. "The moral obligation to pay for services rendered as a broker in selling real estate under an oral contract, where the statute requires such contract to be in writing, is just as binding as is the moral obligation to pay a debt that has become barred by the statute of limitations; and there is no reason for holding that the latter will support a new promise to pay while the former will not. There is no moral delinquency that attaches to an oral contract to sell real property as a broker. This service cannot be recovered for because the statute says the promise must be in writing, not because it is illegal in itself. It was not intended by the statute to impute moral turpitude to such contracts. The statute was intended to prevent frauds and perjuries, and, to accomplish that purpose, it is required that the evidence be in writing; but it is not conducive to either fraud or perjury to say that the services rendered under the void contract or voluntarily will support a subsequent written promise to pay for such services." (26 Cal. App. at pp. 463-464. Accord: *Estate of Rule* (1944) 25 Cal.2d 1, 11-12 [152 P.2d 1003, 155 A.L.R. 1319]; *Coulter* v. *Howard* (1927) 203 Cal. 17, 22-23 [262 P. 751]; *Bonaccorso* v. *Kaplan* (1963) 218 Cal.App.2d 63, 69 [32 Cal.Rptr. 69]; *Hillman* v. *Koch* (1949) 92 Cal.App.2d 163, 166 [206 P.2d 434]; *Ayoob* v. *Ayoob* (1946) 74 Cal.App.2d 236, 242-245 [168 P.2d 462].) This rule conforms with the weight of authority. (See *Elbinger* v. *Capitol & Teutonia Co.* (1932) 208 Wis. 163, 166 [242 N.W. 568, 569] and cases collected; 1A Corbin, Contracts (1963 Rev.) § 238, pp. 377-381, particularly p. 380, fn. 16 and accompanying text; 11 Am.Jur.2d, Bills and Notes, § 221, p.

249, fn. 9, and accompanying text. Cf. *Garvey* v. *Wenzel* (1956) 272 Wis. 606, 609 [76 N.W.2d 291, 293]; and see *Bagnole* v. *Madden* (1908) 76 N.J.L. 255, 256 [69 A. 967], *contra*.)

Since there was no necessity for plaintiffs to prove a prior written agreement, defendant was in no way prejudiced by the court's rulings on the evidence, or by its failure to make findings on that subject. If there was a written agreement with terms other than those revealed by Fellom's testimony, defendant could have produced it as part of his case. No reversible error is found in the rulings of the court with respect to the evidence or requested findings relating to the' existence of a prior written agreement.

*Exhaustion of the Security*

 At the time of the transactions involved Code of Civil Procedure section 726 provided in part, as follows: "There can be but one form of action for the recovery of any debt, or the enforcement of any right secured by mortgage upon real *or personal* property, . . ." (Italics added.)

By Statutes of 1963, chapter 819, section 26, page 2007, effective January 1, 1965 (*id.*, § 52, p. 2015), the section was amended, and the words "or personal" were deleted. (See also Stats. 1967, ch. 1003, § 1, p. 2594, and Stats. 1968, ch. 450, § 3, p. 1070.) It is unnecessary to determine in these proceedings the effect of the repeal on an action commenced before (January 17, 1964) its effective date on a preexisting instrument. Generally a change affecting only a matter of procedure will apply to actions which are pending when the statute becomes effective. (*National Auto. & Cas. Ins. Co.* v. *Downey* (1950) 98 Cal.App.2d 586, 590-591 [220 P.2d 962].) It has been indicated that the restriction imposed by' section 726 is procedural. (*First-Trust Joint Stock Land Bank* v. *Meredith* (1936) 5 Cal.2d 214, 217 [53 P.2d 958].)

In any event, the court found on substantial evidence that it was not true that the note was secured by a mortgage on real or personal property. (See discussion of findings above.) Under these circumstances the provisions of section 726 would not apply. (See *Otto* v. *Long* (1900) 127 Cal. 471, 477 [59 P. 895]; *Kogan* v. *Bergman* (1966) 244 Cal.App.2d 613, 620-622 [53 Cal.Rptr. 371]; *Taggart* v. *Cal-Linda Packing Co.* (1956) 146 Cal.App.2d 545, 548 [304 P.2d 172]; and *Sanborn* v. *Sanborn* (1934) 3 Cal.App.2d 437, 439-440 [39 P.2d 830].)

The court further found on substantial evidence that the

building contracts referred to in the promissory note had become valueless. Under these circumstances, even if the words in the note itself alone were deemed to create an interest cognizable under the former provisions of section 726 as a mortgage of personal property, the requirement of exhausting the security would be excused. (*Brown* v. *Jensen* (1953) 41 Cal.2d 193, 195-196 [259 P.2d 425]; *Otto* v. *Long, supra,* 127 Cal. 471, 477.)

No error can be predicated upon plaintiffs' failure to attempt to collect the obligation by taking action to enforce or collect on the building contracts referred to in the note.

The judgment is affirmed.

Molinari, P. J., and Elkington, J., concurred.